2023 IL App (1st) 221032

THIRD DIVISION
September 27, 2023

No. 1-22-1032

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21 CR 11944 |
| | ) | |
| CHRISTION GUNN, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | | |

_____

JUSTICE R. VAN TINE delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1                                        BACKGROUND

¶ 2      Following a bench trial, defendant Christion Gunn was convicted of aggravated unlawful use of a weapon (AUUW). 720 ILCS 5/24-1.6 (West 2020). The conviction was based on a traffic stop during which police found a loaded firearm on his person. During the stop, Gunn told the arresting police officers that his Firearm Owner's Identification (FOID) card had been revoked

and that he never had a concealed carry license (CCL). On appeal, Gunn argues that his conviction must be reversed because the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/1 *et seq.* (West 2020)) and the Firearm Concealed Carry Act (Carry Act) (430 ILCS 66/1 *et seq.* (West 2020)) are both facially unconstitutional under the second amendment to the United States Constitution as interpreted by the recent United States Supreme Court decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___,142 S. Ct. 2111 (2022). For the following reasons, we affirm.

¶ 4                                    FACTS

¶ 5      On the evening of August 11, 2021, a marked police squad car driven by Chicago police officer Chavon Trammell pulled Gunn over because one of his headlights was out and his license plate was expired. Officers Trammell, Matthew Dorsen, and Jacob Gies exited the squad car and approached Gunn's vehicle. Officer Trammell knocked on the rear passenger-side window of Gunn's vehicle to get his attention. Trammell testified that, as Gunn lowered his window, the smell of burnt cannabis immediately emanated from the vehicle, and Trammell noticed a cigarillo wrapper in Gunn's right hand. Upon request, Gunn provided his driver's license and proof of insurance. However, because of the smell of burnt cannabis, Trammell asked Gunn to step out of the vehicle.

¶ 6      Trammell handcuffed Gunn and searched him. The search revealed a loaded firearm in his front waistband. Gunn told the officers that his FOID card had been revoked and that he never had a CCL. Based on the events of this traffic stop, the State charged Gunn with three counts of AUUW. Ultimately, the case proceeded to trial solely on count I, which alleged that Gunn carried

a loaded firearm without possessing a valid FOID card or CCL. The circuit court found Gunn guilty of AUUW and sentenced him to 15 months in prison. This direct appeal follows.

¶ 7                                                    ANALYSIS

¶ 8      On appeal, Gunn argues that his AUUW conviction must be reversed because it was based on his noncompliance with the FOID Card Act and Carry Act, both of which, according to Gunn, violate the second amendment to the United States Constitution. Specifically, Gunn essentially argues that the FOID Card Act is facially unconstitutional because the second amendment does not permit any kind of restriction on the right to bear arms. Gunn contends that the Carry Act is also facially unconstitutional because the procurement of a CCL is conditioned on possession of a FOID card. In support of these arguments, Gunn relies on the Supreme Court decision in *Bruen*, 597 U.S. ___, 142 S. Ct. 2111, and its holding that gun regulation regimes must be analyzed through a historical lens of firearm regulation.

¶ 9      We have an independent duty to consider our own jurisdiction, irrespective of whether the parties have raised it. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). When jurisdiction is lacking, we must dismiss the appeal. *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 73. Generally, "[t]o preserve an issue for appellate review, a defendant must both object at trial and present the issue in a written posttrial motion." *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). However, an exception exists for constitutional challenges: a challenge to the constitutionality of a statute may be raised at any time. *In re M.I.*, 2013 IL 113776, ¶ 39. Accordingly, we have jurisdiction to consider his appeal. We proceed to the merits of the case.

¶ 10     The FOID Card Act requires persons to obtain a FOID card before legally possessing firearms or ammunition. 430 ILCS 65/2(a) (West 2020). The Carry Act requires persons to obtain

a CCL prior to lawfully carrying a firearm on their person. 430 ILCS 66/10 (West 2020). The AUUW statute (720 ILCS 5/24-1.6 (West 2020)) criminalizes noncompliance with the FOID Card Act and Carry Act as follows:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; ***

*** and

(3) One of the following factors is present:

***

(A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act; or

* * *

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]" *Id.*

¶ 11    The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

4

¶ 12    Here, we are tasked with determining whether certain Illinois statutes conflict with federal law. It is well settled that "[s]tate law is null and void if it conflicts with federal law." *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 14 (citing *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112, 117 (2001)). However, we presume statutes are constitutional, and "we have the duty to construe statutes so as to uphold their constitutionality if there is any reasonable way to do so." *People v. Jones*, 223 Ill. 2d 569, 595-96 (2006) (citing *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351 (1999), and *People v. Inghram*, 118 Ill. 2d 140, 146 (1987)). Facial challenges require a showing that the statutes in question are unconstitutional under any set of facts. *People v. Thompson*, 2015 IL 118151, ¶ 36. The burden on the challenger is "particularly heavy when *** a facial constitutional challenge is presented." *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18. Constitutional challenges to statutes present a question of law, and we review such questions *de novo*. *People v. Madrigal*, 241 Ill. 2d 463, 466 (2011). *De novo* review means we engage in the same analysis as the trial court. *Xuedong Pan v. King*, 2022 IL App (1st) 211482, ¶ 16.

¶ 13    The United States Supreme Court has expounded the second amendment on numerous occasions, most recently in its landmark decision in *Bruen*, 597 U.S. ___, 142 S. Ct. 2111. *Bruen* involved a challenge to a New York licensing regime that regulated gun possession and carry. *Id.* at ___, 142 S. Ct. at 2122. Persons wishing to possess a firearm *at home* were required to convince a licensing officer that they were of good moral character and did not have a history of crime or mental disease and that no good cause for denial existed. *Id.* at ___, 142 S. Ct. at 2122-23. However, persons wishing to carry a firearm *outside* of their home had to show "proper cause" to be issued a license. *Id.* at ___, 142 S. Ct. at 2123. This generally meant that people had to " 'demonstrate a special need for self-protection distinguishable from that of the general community.' " *Id.* at ___, 142 S. Ct. at 2123. The Supreme Court held that the proper cause

requirement of the carry regulation violates the constitutional right to keep and bear arms. *Id.* at 142 S. Ct. at 2156.

¶ 14    We now address whether the FOID Card Act and Carry Act comport with federal law.

¶ 15                    *The Constitutionality of the FOID Card Act*

¶ 16    In 1968, the Illinois General Assembly passed the FOID Card Act to "identify[ ] persons who are not qualified to acquire or possess firearms, firearm ammunition, stun guns, and tasers." 430 ILCS 65/1 (West 2020). In line with that goal, the FOID Card Act requires that a person wishing to acquire or possess a firearm first obtain a FOID card from the Illinois State Police. *Id.* § 2(a)(1). An applicant must pay a $10 fee to the Illinois State Police. *Id.* § 5(a). Applicants must also submit proof of Illinois residence, show they are at least 21 years of age, and provide a photograph. *Id.* §§ 4(a)(2)(a)(xiv), (a)(2)(i), (a-20). Upon receipt of the application, the Illinois State Police conducts an

> "automated search of its criminal history record information files and those of the Federal Bureau of Investigation, including the National Instant Criminal Background Check System, and of the files of the Department of Human Services relating to mental health and developmental disabilities to obtain any felony conviction or patient hospitalization information which would disqualify a person from obtaining or require revocation of a currently valid Firearm Owner's Identification Card." *Id.* § 3.1(b).

¶ 17    If applicants meet these requirements, the Illinois State Police *shall* issue them a FOID card within 30 days of applying. *Id.* § 5(a). Upon issuance, a FOID card remains valid for 10 years. *Id.* § 7(a). Illinois is known as a *shall-issue* state because the police must issue a FOID card to any applicant who fulfills the criteria set forth in the statute. 430 ILCS 65/5 (West 2020).  In contrast

to the New York regulations, the state of Illinois does not have discretion to deny an applicant based on requirements or factors not explicitly set forth in the statute.

¶ 18    Gunn argues that the FOID Card Act's requirements that a person provide evidence of personal information and pay a fee constitute an impermissible barrier to the exercise of second amendment rights. He contends that the FOID Card Act is inconsistent with the nation's historical tradition of firearm regulation and therefore violates the right to bear arms. We find Gunn's argument meritless.

¶ 19    First, Gunn cites no authority to support the proposition that the FOID Card Act is unconstitutional on its face. Our supreme court has held only that the FOID Card Act does not apply within a person's home. *People v. Brown*, 2020 IL 124100, ¶¶ 31-33. Here, Gunn was not at home. Gunn was outside of his home with a loaded firearm and without a valid FOID card. There is no indication in the *Brown* decision that our supreme court questioned the validity of the FOID Card Act outside the home.

¶ 20    Second, we find *Bruen*'s holding inapplicable to Gunn's challenge to the FOID Card Act. As explained above, *Bruen* held that the proper cause requirement of New York's carry licensing regime was unconstitutional. That is, *Bruen* considered whether New York's concealed carry legislation complied with federal law; it did not address the question of whether a requirement like the FOID card was permissible under federal law. To the contrary, the Court explicitly acknowledged that background checks, which are the cornerstone of the FOID Card Act, are permissible. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2138 n.9. There is no need for us to engage in a historical analysis of firearm regulation when the Supreme Court has already done so and explicitly sanctioned the use of background checks. *Id.* at ___, 142 S. Ct. at 2138 n.9. Based on the foregoing, we hold that the FOID Card Act complies with federal law.

¶ 21                    *The Constitutionality of the Carry Act*

¶ 22     In 2013, Illinois implemented the Carry Act to allow qualified individuals to obtain licenses to carry concealed handguns in public. 430 ILCS 66/1 *et seq.* (West 2020). In addition to possessing a valid FOID card (*id.* § 25(2)) and paying a $150 fee to the Illinois State Police (*id.* § 60(b)), an individual seeking a CCL must fulfill several requirements. The individual must not have been found guilty in this state or another state of a misdemeanor involving the use or threat of physical force or violence to any person within five years preceding the date of the application. *Id.* § 25(3)(A). Also, the individual must not have two or more violations related to impaired driving within the same time period. *Id.* § 25(3)(B). Applicants must not be the subject of a pending warrant or prosecution that could result in their disqualification to possess a firearm (*id.* § 25(4)), and have not been ordered treatment for alcohol or drugs within the five preceding years. *Id.* § 25(5). Applicants must provide proof they completed a 16-hour firearms training course. *Id.* § 25(6).

¶ 23     As with the FOID card, the Illinois State Police *shall* issue applicants who have complied with these requirements a CCL within 90 days. *Id.* § 10(a), (e). Upon issuance, a CCL remains valid for five years. *Id.* § 10(c). As with the FOID card, Illinois is a *shall-issue* jurisdiction with respect to the CCL. 430 ILCS 66/10 (West 2020). That is, the State does not have any discretion to deny a CCL to an applicant who fulfills these objective criteria. Unlike the discretionary issuances of licenses that were the subject of the *Bruen* case, the Illinois statute mandates issuance of FOID cards and CCLs within the framework of what has always been historically acceptable in the United States.

¶ 24     In *Bruen*, the Supreme Court emphasized the centrality of a historical analysis in determining whether a challenged gun regulation passes constitutional muster. Citing *District of*

*Columbia v. Heller*, 554 U.S. 570 (2008), the Court iterated that the relevant test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2131. As mentioned above, the New York carry licensing required an applicant to demonstrate "proper cause," which generally meant " 'demonstrat[ing] a special need for self-protection distinguishable from that of the general community.' " *Id.* at ___, 142 S. Ct. at 2123. The determination of what constituted "proper cause" was performed on an applicant-by-applicant basis. The Supreme Court found that New York failed to "demonstrate a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense." *Id.* at ___, 142 S. Ct. at 2138. Additionally, the Court found that there is no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at ___, 142 S. Ct. at 2138. However, the *Bruen* Court, while citing several historical precedents, plainly acknowledged:

> "To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' *Drake v. Filko*, 724 F. 3d 426, 442 (CA3 2013) (Hardiman, J., dissenting). Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' *Ibid.* And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing

officials, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969), rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940)—features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id.* at ___, 142 S. Ct. at 2138 n.9.

¶ 25    Moreover, the *Bruen* Court acknowledged that, "[t]hroughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Id.* at ___, 142 S. Ct. at 2138.

¶ 26    Gunn contends that the Carry Act is unconstitutional for several reasons.[1] First, because the issuance of a CCL is contingent on the applicant's possession of a valid FOID card (which he argues is unconstitutional), the CCL requirement also violates federal law. Second, he asserts that the requirement of completing a 16-hour firearms training course is impermissible because it grants too much discretion to a firearms instructor. Third, he argues that the Carry Act's 90-day waiting period and 5-year validity period are unconstitutional because they do not comport with our nation's historic tradition of firearm regulation. We find Gunn's arguments unpersuasive.

¶ 27    Gunn's first argument is without merit. We have already addressed how the FOID Card Act complies with federal law.

---

[1] We note here that that this court previously declined to consider a challenge to the constitutionality of the Carry Act. *People v. Thompson*, 2023 IL App (1st) 220429-U. In that case, the court found that the defendant lacked standing to challenge the Carry Act because he did not "submit to the challenged policy." *Id.* ¶ 59. Here, we consider the merits of Gunn's argument because the State's cursory argument regarding standing is unpersuasive.

¶ 28    Gunn's second argument challenges the validity of the Carry Act's provision that states "[a] certificate of completion for an applicant's firearm training course shall not be issued to a student who: (1) does not follow the orders of the certified firearms instructor." 430 ILCS 66/75 (e)(1) (West 2020). According to Gunn, this grants an impermissible amount of discretion to the State. Under Gunn's theory, the requirement would only be constitutional if the applicant's only obligation was to be physically present at the course. This argument is without merit. A firearms training course would serve no purpose if all the applicant was required to do was to be physically present and ignore the instruction. As mentioned above, *Bruen* approved of firearms safety courses. Gunn offers an overreaching interpretation of *Bruen*, and we must reject it.

¶ 29    Third, there is no need to engage in a historical analysis to determine whether the Carry Act's 90-day waiting period and 5-year validity period are constitutional. In *Bruen*, the Court suggested that "lengthy" license processing wait times or "exorbitant" licensing fees may be grounds for findings of unconstitutionality. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2138 n.9. Here, however, Gunn has not alleged or argued that the 90-day waiting period and $150 fee every 5 years for renewal constitute "lengthy wait times" or "exorbitant fees," respectively. We cannot say that 90 days constitutes a "lengthy" wait time nor that a $150 fee constitutes an "exorbitant fee." Accordingly, we reject this argument.

¶ 30    In sum, consistent with the Supreme Court's guidance quoted above, the Carry Act sets forth broadly applicable, well-defined requirements, which, if fulfilled, result in the issuance of a CCL. These include background checks and completion of a firearms training course, both of which the Supreme Court explicitly sanctioned in *Bruen*. None of the requirements compel applicants to demonstrate a special need to carry firearms for self-defense, nor are these requirements subject to the State's discretion. Again, Illinois is a *shall-issue* jurisdiction. Unlike

the New York regulation that granted broad discretion to the state in deciding whether an applicant has demonstrated a special need to carry, Illinois's statute does not do that. Simply put, the Illinois scheme aims to ensure that only law-abiding citizens are allowed to carry firearms.

¶ 31    Accordingly, we find no basis under *Bruen* to invalidate the Carry Act. We hold that the Carry Act comports with federal law and, consequently, the AUUW statute does as well.

¶ 32                                     CONCLUSION

¶ 33    In *Bruen*, the United States Supreme Court had the opportunity to denounce states' gun regulation schemes outright. However, it did not do so. Rather, it explicitly acknowledged that *shall-issue* regimes, which are aimed at ensuring that only law-abiding citizens are allowed to possess and carry firearms, do not prevent citizens from exercising their second amendment rights. Illinois is a *shall-issue* state with clearly defined, objective criteria regarding firearm possession and carry. Thus, we have no reason to believe that the Supreme Court intended to invalidate the type of firearm regulation employed by our state.

¶ 34    For the foregoing reasons, we affirm Gunn's AUUW conviction.

¶ 35    Affirmed.

*People v. Gunn*, 2023 IL App (1st) 221032

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CR-11944; the Hon. Vincent M. Gaughan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Arianne Stein, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian Levitsky, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |