2023 IL App (1st) 221266-U

No. 1-22-1266

Second Division
December 12, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 22 CR 1403 |
| DEVIN KUYKENDOLL, | ) ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Statute criminalizing the public possession of a firearm without a Firearm Owners Identification Card or Concealed Carry License is not facially unconstitutional. Defendant's conviction for the aggravated unlawful use of a firearm is affirmed.

¶ 2   Following a bench trial, defendant Devin Kuykendoll was convicted of the aggravated unlawful use of a weapon (AUUW) and sentenced to one year in prison. The charges were based on defendant's possession of a firearm in public without having been issued a valid Firearm

Owners Identification (FOID) card or Concealed Carry License (CCL). Defendant now appeals, arguing that the FOID card and CCL requirements are facially unconstitutional in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). We affirm for the following reasons.

¶ 3                                 I. BACKGROUND

¶ 4     On the night of February 6, 2022, Chicago police officers Ryan Corrigan and Christine Golden were patrolling in their vehicle near Ashland Avenue in Chicago. Officer Golden was the driver and Officer Corrigan was the passenger. Just before midnight, they observed defendant, who was driving a sedan, commit a traffic violation. The officers activated their emergency equipment, but defendant did not immediately pull over. The officers quickly forced him to stop by overtaking his sedan along the driver's side and pulling in front of it.

¶ 5     Officer Corrigan exited his vehicle and approached the sedan. Defendant was sitting in the driver's seat with an extended firearm magazine protruding from his left pocket. Officer Corrigan reached into defendant's sedan and grabbed the magazine, at which point he discovered that it was attached to a handgun. Officer Corrigan placed the gun on the roof of defendant's sedan, but at some point it slid off the roof and onto the ground. Officer Corrigan then ordered defendant out of the sedan and, after several minutes, defendant complied and was arrested.

¶ 6     Officer Golden testified that after curbing defendant's sedan, she exited her vehicle and walked around the front to reach where Officer Corrigan was already engaged with defendant. As Officer Golden approached, she observed Officer Corrigan pull an "object" out of defendant's sedan and place it on the roof, but she was unable to see what the object was. However, Officer Golden later saw a firearm on the ground "directly below" where Officer Corrigan had placed the object on the roof. The firearm was recovered after defendant was taken into custody.

¶ 7 The parties stipulated that defendant had not been issued a valid FOID card or CCL at the time of the traffic stop.

¶ 8 Based on this evidence, the trial court found defendant guilty of AUUW. Defendant filed a posttrial motion attacking the sufficiency of the evidence, which the court denied. The court later sentenced defendant to one year in prison.

¶ 9 This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11 On appeal, defendant argues that his conviction should be overturned because the portions of the AUUW statute under which he was convicted are facially unconstitutional. He contends that requiring an otherwise law-abiding citizen to first obtain a FOID card or CCL before possessing a firearm in public impermissibly restricts one's right to keep and bear arms under the second amendment to the United States Constitution. More specifically, defendant maintains that the AUUW statute fails the "new two-step test" announced in *Bruen*, where the United States Supreme Court held that restrictions on the right to bear arms must be analyzed through the lens of our nation's historical regulation of firearms. *Bruen*, 142 S. Ct. at 2126.

¶ 12 A defendant may challenge the facial constitutionality of a statute at any time, even, as here, for the first time on appeal. *People v. Thompson*, 2015 IL 118151, ¶ 32. A facially unconstitutional statute is void *ab initio*, meaning that "the statute was constitutionally infirm from the moment of its enactment and, therefore, unenforceable." *Id.* However, a facial challenge is "the most difficult challenge to mount" because a statute is facially unconstitutional only if there are no possible circumstances in which the statute could be validly applied. *People v. Davis*, 2014 IL 115595, ¶ 25. Moreover, all statutes are strongly presumed to be constitutional, and the challenging party bears the burden of rebutting that presumption by demonstrating a clear constitutional

violation. *People v. Woodrum*, 223 Ill. 2d 286, 307-08 (2006). The constitutionality of a statute is reviewed *de novo*. *People v. Aguilar*, 2013 IL 112116, ¶ 15.

¶ 13    As relevant here, the AUUW statute provides that:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; ***

*** and

(3) One of the following factors is present:

***

(A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act; or

* * *

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]" 720 ILCS 5/24-1.6(a)(1) (West 2020).

¶ 14    The process for obtaining a FOID card is laid out in the FOID Card Act, which the General Assembly enacted "to provide a system of identifying persons who are not qualified to acquire or possess firearms, firearm ammunition, stun guns, and tasers within the State of Illinois[.]" 430

ILCS 65/1 (West 2020). To apply for a FOID card, a person must: (1) be at least 21 years of age, (2) not be addicted to narcotics, (3) not have been convicted of a felony, and (4) not have been a patient in a mental health facility within the past 5 years. *Id.* § 4(a)(2). Applicants must also submit a photograph and pay a fee of $10 plus a minimal electronic payment processing surcharge. *Id.* §§ 4(a)(2)(a-20), 5(a). Finally, upon request, an applicant must also consent to the Illinois State Police obtaining "limited mental health institution admission information" from jurisdictions outside Illinois "for the sole purpose of determining whether the applicant is or was a patient in a mental health institution[.]" *Id.* § 4(a)(3). Importantly, an applicant who meets these requirements and pays the fee "*shall* be entitled to a [FOID] Card" and the Illinois State Police *shall* issue the card within 30 days of receiving the application. (Emphasis added.). *Id.* § 5(a).

¶ 15    Similarly, the Firearm Concealed Carry Act details the requirements for obtaining a CCL. To qualify for a CCL, individuals must possess a valid FOID card and pay a fee of $150. 430 ILCS 66/1 (West 2020).  An applicant must also (1) be at least 21 years of age, (2) not have been convicted of a misdemeanor involving the use of force or threat of force within 5 years of the application date, (3) not have two or more violations for driving under the influence of drugs or alcohol within 5 years of the application date, (4) not be the subject of a pending arrest warrant or prosecution that could result in the forfeiture of their right to possess a firearm, and (5) not have been in residential or court-ordered treatment for drugs or alcohol within 5 years of the application date. *Id.* § 25(1-5) (West 2020). Additionally, an applicant must complete a 16-hour firearms training course covering topics such as firearms safety, basic marksmanship, and applicable firearms laws, including how to interact with law enforcement while carrying a concealed firearm. *Id.* §§ 25(6), 75. As with FOID cards, the Illinois State Police "shall issue" a CCL to any applicant

who meets the requirements and pays the fee. *Id.* § 10. The Illinois State Police must either approve or deny a license within 90 days of receiving an application. *Id.*

¶ 16     As previously stated, defendant's sole contention on appeal is that the FOID card and CCL requirements fail the test recently articulated in *Bruen* because this nation's history does not reveal any reasonably analogous restrictions on the right to bear arms.

¶ 17     Before addressing the merits of defendant's position, however, we briefly acknowledge that in its brief on appeal, the State argued that defendant lacked standing to bring his challenge because there is no evidence that he attempted to procure either a FOID card or CCL. However, at oral argument, the State conceded that defendant had standing. We agree with the State's concession, as a party generally has standing to challenge the constitutionality of a statute where "he has sustained or is in immediate danger of sustaining some direct injury as a result of the statute." *Aguilar*, 2013 IL 112116, ¶ 12. Here, defendant was convicted and punished under the AUUW statute, which as explained, incorporates the requirements of the FOID Card and Concealed Carry Act by criminalizing noncompliance. Thus, he has standing to challenge the statute's constitutionality. See *People v. Fulton*, 2016 IL App (1st) 141765, ¶ 19 (defendant had standing to challenge his conviction for being an armed habitual criminal despite never applying for a FOID card); see also *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 25, n. 1 (rejecting State's argument that defendant convicted of AUUW lacked standing to challenge the Conceal Carry Act).

¶ 18     We now turn to the merits of defendant's claim. The heart of his argument is that the AUUW statute violates the protections of the second amendment, which are made applicable to the states through the fourteenth amendment. *Bruen*, 142 S. Ct. at 2137.

¶ 19     The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const.,

amend. II. The United States Supreme Court most recently interpreted the scope of second amendment protections in *Bruen*. At issue there was a New York firearm licensing regime which required applicants to establish that "proper cause" existed to issue them a license. *Bruen*, 142 S. Ct. at 2123. Under the New York law, "proper cause" generally required an applicant to " 'demonstrate a special need for self-protection distinguishable from that of the general community.' " *Id.* (quoting *In re Klenosky*, 75 App. Div.2d 793, 428 N.Y.S.2d 256, 257 (1980)). For instance, applicants were often tasked with producing evidence of " 'particular threats, attacks or other extraordinary danger to personal safety.' " *Id.* (quoting *In re Martinek*, 294 App.Div.2d 221, 222, 743 N.Y.S.3d 80, 81 (2002)).

¶ 20    After reviewing its second amendment jurisprudence, the Court articulated a two-part test for evaluating the constitutionality of firearm regulations. *Id.* at 2126. At the first step, an individual's conduct is presumptively protected by the constitution if the conduct is covered by the second amendment's plain text. *Id.* Second, if the individual's conduct is covered by the second amendment, then "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

¶ 21    The Court ultimately held that New York's regime was unconstitutional, reasoning that the "proper cause" requirement gave the government too much discretion to deny a license to an applicant seeking to possess a firearm out of a generalized desire for self-protection. *Id.* at 2156.

¶ 22    In so ruling, however, the Court made special note to contrast discretionary "may-issue" regimes like New York's with the so-called "shall-issue" laws used by vast majority of states.[1] Under these "shall-issue" regimes, licensing authorities were required to grant a license to any

---

[1] By the *Bruen* Court's count, "shall-issue" laws were in effect in 43 states, including Illinois. *Bruen*, 142 S. Ct. at 2123-24.

applicant who satisfied certain well-defined, objective criteria. *Id.* at 2138 n. 9. Specifically, the Court stated:

"To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' *Drake v. Filko*, 724 F.3d 426, 442 (CA3 2013) (Hardiman, J., dissenting). Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008). Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' *Ibid.* And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing officials, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S. Ct. 935, 22 L.Ed.2d 162 (1969), rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' *Cantwell v. Connecticut*, 310 U.S. 296, 305, 60 S. Ct. 900, 84 L.Ed. 1213 (1940)—features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id.*

¶ 23    Justice Kavanaugh, joined by Chief Justice Roberts, also wrote a concurring opinion to emphasize that the Court's decision "does not affect" shall-issue regimes like the one used in

Illinois. *Id.* at 2161 (Kavanaugh, J., concurring, joined by Roberts, C.J.). Rather, Justice Kavanaugh wrote that, "the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so." *Id.* at 2162. Further, "[t]hose shall-issue regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* Like the majority, though, the concurring Justices also recognized that even shall-issue regimes could be subject to as-applied constitutional challenges if such regimes operated in practice to require something more than basic requirements and a generalized desire for self-defense. *Id.*

¶ 24   Here, defendant spends much of his brief on appeal arguing that the FOID card and CCL requirements are not rooted in our nation's historical tradition of firearm regulation. This is exactly the same argument we rejected in *People v. Gunn*, 2023 IL App (1st) 221032, ¶¶ 19, 28, a case we find instructive. In *Gunn*, we explained that there was "no need to engage in a historical analysis of firearm regulation when the Supreme Court has already done so and explicitly sanctioned" the licensing requirements in the FOID Card and Conceal Carry Acts. *Id.* ¶ 20.

¶ 25   We will follow *Gunn* here because, as the previous discussion shows, nothing in *Bruen* supports defendant's position that the AUUW statue is unconstitutional. To the contrary, it is clear that Illinois employs the kind of shall-issue regime endorsed by the *Bruen* Court. Indeed, both the FOID Card Act and the Conceal Carry Act provide that the Illinois State Police "shall issue" a license to any applicant who meets the well-defined, objective criteria contained therein. 430 ILCS 65/5 (West 2020); 430 ILCS 66/10 (West 2020). Thus, it is no surprise that the *Bruen* Court counted Illinois among the 43 states that have enacted "shall-issue regimes." *Bruen*, 142 S. Ct. at

2123-24; see also *Gunn*, 2023 IL App (1st) 221032, ¶ 32 ("Illinois is a *shall-issue* state with clearly defined, objective criteria regarding firearm possession and carry.") (Emphasis in original.).

¶ 26    We acknowledge defendant's contention that Illinois is not a shall-issue state with regard to CCLs, but this argument can be easily dismissed. Specifically, defendant points out that an applicant will not be deemed to have completed the required firearms training course if he "does not follow the orders of the certified firearms instructor." 730 ILCS 66/75(e)(1) (West 2020). According to defendant, this provision grants the State too much discretion because it does not define exactly what "orders" the instructor may give. However, requiring a firearms training course—a practice specifically approved by the *Bruen* Court—would obviously serve no purpose if applicants were free to disregard the instruction. *Gunn*, 2023 IL App (1st) 221032, ¶ 27. Defendant's argument is therefore unpersuasive.

¶ 27    Finally, we also note that *Bruen* recognized the possibility of shall-issue regimes violating the constitution if, in practice, they denied average citizens their second amendment rights through things like "lengthy wait times" or "exorbitant fees." *Bruen*, 142 S. Ct. at 2138 n. 9. However, we cannot say that is the case here, where a FOID card must be issued within 30 days, with a $10 fee, and a CCL must be issued within 90 days, with a $150 fee. Defendant does not make any serious argument to the contrary.[2] Thus, *Bruen* provides no basis to declare the AUUW statute unconstitutional.

### III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court.

---

[2] In his brief on appeal, defendant cites a law review article asserting that the average wait time for a FOID card was actually 51 days amid record-high demand in the summer of 2020. Even accepting this information as true for the sake of argument, we still cannot say it rises to the level of a constitutional violation.

¶ 29    Affirmed.