2024 IL App (1st) 230679-U

No. 1-23-0679

Order filed May 3, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | No. 22 CR 08267 |
| | ) | |
| HERBERT PITTS | ) | Honorable Maria Kuriakos-Ciesil, |
| | ) | Judge, Presiding. |
| Petitioner-Appellant. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held:* Defendant's conviction for aggravated unlawful use of a weapon is affirmed over his contention that the subsection of the statute under which he was convicted violates the second amendment of the United States Constitution; affirmed.

¶ 2    On December 1, 2022, defendant, Herbert Pitts, pled guilty to aggravated unlawful use of a weapon (AUUW) based on carrying a firearm in public without having been issued a currently valid Firearm Owner's Identification Card (720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2022)). Thereafter, on February 8, 2023, Pitts filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2022)), arguing that the section of the AUUW statute under which he was convicted was facially unconstitutional. The

circuit court denied him relief because his petition was untimely. Pitts now appeals that order. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On December 1, 2022, in exchange for serving one year in prison, Pitts pled guilty to one count of AUUW, in that he carried a firearm in public without having been issued a currently valid Firearm Owner's Identification Card (FOID card) (720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2022)). As for the factual basis for the plea, the parties stipulated as follows. On January 3, 2022, Chicago police officers observed Pitts drinking alcohol on a public way, after which the officers asked him if he had any weapons on him. Pitts told the officers that he did not have a weapon on him. The officers conducted a protective pat down of his closed fanny pack and recovered a loaded nine-millimeter automatic handgun from him. Pitts did not possess a valid FOID card. The court found that there was a factual basis for the plea and sentenced Pitts to one year in prison.

¶ 5        On February 8, 2023, Pitts filed a *pro se* petition for relief from judgment under section 2-1401 of the Code, in which he argued that pursuant to Illinois Supreme Court cases, *People v. Aguilar*, 2013 IL 112116, and *People v. Burns*, 2015 IL 117387, the section of the AUUW statute under which he was convicted was facially unconstitutional and in violation of the second amendment of the United States Constitution (U.S. Const., amend. II). He argued that his conviction for AUUW was void *ab initio*, as it was based on an unconstitutional statute, and he requested the court vacate his conviction. We note that Pitts was convicted under section 24-1.6(a)(1), (3)(C) of the AUUW statute, and in Pitts' petition, he cited a different section of the AUUW statute under which he was convicted.

¶ 6    At the hearing on Pitts' petition, the court characterized his pleading as a "motion to vacate plea" and denied his motion because it was filed on February 28, 2023, which was more than 30 days after he entered his guilty plea on December 1, 2022.

¶ 7    II. ANALYSIS

¶ 8    Initially, Pitts contends, and the State agrees, that the circuit court erred when it incorrectly characterized his section 2-1401 petition as a motion to withdraw his guilty plea and denied it as untimely, as it was filed more than 30 days after he entered the guilty plea. See Ill. S. Ct. R. 605(b)(2) (eff. Oct. 1, 2002). We agree with the parties.

¶ 9    Pitts' petition specifically requested relief under section 2-1401 of the Code and alleged that his conviction for AUUW was void because the subsection under which he was convicted was facially unconstitutional. "[A] motion to vacate a void judgment is properly raised in a petition for relief from judgment under section 2-1401." *People v. Ligon*, 2016 IL 118023, ¶ 9. Further, a defendant may raise a challenge to a final judgment based on a facially unconstitutional statute at any time (*People v. Thompson*, 2015 IL 118151, ¶ 32), and section 2-1401 authorizes a circuit court to "vacate or modify a final order or judgment older than 30 days." *People v. Abdullah*, 2019 IL 123492, ¶ 13. Accordingly, the court erred when it characterized Pitts' section 2-1401 petition as a motion to vacate his guilty plea and then denied it as untimely. However, we may construe the circuit court's denial of Pitts' pleading as a dismissal of a section 2-1401 petition. See *People v. Needham*, 2016 IL App (2d) 130473, ¶ 13 ("we may construe an order denying a motion to vacate a void judgment as the dismissal of a section 2-1401 petition, even though the trial court did not explicitly recharacterize it as such"). Further, we review the constitutionality of a statute *de novo* (*People v. Baker*, 2023 IL App (1st) 220328, ¶ 21) and, under this standard, we "may affirm on any basis found in the record." *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 38.

3

¶ 10      We also note that the State argues that Pitts waived any constitutional challenge he may have based on subsequent changes in the law because he entered into a knowing and voluntary guilty plea. However, Pitts is arguing that the statute under which he was convicted was facially unconstitutional, and our supreme court has stated that, "a guilty plea does not preclude a defendant from arguing on appeal that he was sentenced under a statute that was facially unconstitutional and void *ab initio*." *People v. Guevara*, 216 Ill. 2d 533, 542-43 (2005). Further, "[d]efendants convicted under a facially unconstitutional statute may challenge the conviction at any time, even after a guilty plea, because the state or government had no power to impose the conviction to begin with." *In re N.G.,* 2018 IL 121939, ¶ 49. Accordingly, by entering into a guilty plea, Pitts did not waive his challenge that the AUUW statute under which he was convicted and sentenced was facially unconstitutional.

¶ 11      We now turn to Pitts' argument that the section in the AUUW statute under which he was convicted was facially unconstitutional in violation of the second amendment to the United States Constitution (U.S. Const., amend II). He contends that his conviction under section 24-1.6(a)(1), (3)(C) of the AUUW statute violates his second amendment right to carry a ready-to-use handgun for self-defense outside the home. He asserts that the requirement in the AUUW statute that a person be issued a FOID Card in order to lawfully possess a gun does not comply with the test set forth by the United States Supreme Court in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 597 U.S. 1 (2022), because, under that test, the firearm regulation is inconsistent with our nation's historical regulation of firearms.

¶ 12      If a judgment is based on a statute that is facially unconstitutional, it is void *ab initio* (*Abdullah*, 2019 IL 123492, ¶ 13), which "means that the statute was constitutionally infirm from the moment of its enactment and, therefore, unenforceable." *Thompson*, 2015 IL 118151, ¶ 32. "A

facial challenge to the constitutionality of a statute is the most difficult challenge to mount," as "[a] statute is facially unconstitutional only if there are no circumstances in which the statute could be validly applied." *People v. Davis*, 2014 IL 115595, ¶ 25. Further, "we presume statutes are constitutional, and 'we have the duty to construe statutes so as to uphold their constitutionality if there is any reasonable way to do so.' " *People v. Gunn,* 2023 IL App (1st) 221032, ¶ 11, *pet. for leave to appeal pending*, No. 221032 (filed Nov. 29, 2023) (quoting *People v. Jones*, 223 Ill. 2d 569, 595-96 (2006)). "The burden on the challenger is 'particularly heavy when *** a facial constitutional challenge is presented.' " *Id.* (quoting *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18). As previously noted, we review a constitutional challenge to a statute *de novo*, as it presents a question of law. *Id.*

¶ 13 Under the FOID Card Act, a person must obtain a FOID card before legally a possessing a firearm. *Id.* ¶¶ 9, 15 (citing 430 ILCS 65/2(a) (West 2020)). Pitts was convicted under the section of the AUUW statute that penalizes a person's noncompliance with the FOID Card Act. See *id.* The AUUW statute under which Pitts was convicted provides, in relevant part, as follows:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; ***
>
> *** and
>
> (3) One of the following factors is present:

***

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]" 720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2022).

¶ 14    The FOID Card Act provides that, "[n]o person may acquire or possess any firearm *** without having in his or her possession a [FOID] Card previously issued in his or her name by the Illinois State Police under the provisions of this Act." 430 ILCS 65/2(a)(1) (West 2022). To apply for a FOID card, a person, who is over the age of 21, must submit an application to the Illinois State Police and provide evidence that they are, among other things, over the age of 21, have not been convicted of a felony, are not addicted to narcotics, and have not been a patient in a mental health facility within the past 5 years. *Id.* § 4(a)(1), (2); see *People v. Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 14 (discussing FOID Card Act); see also Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (unpublished Rule 23 orders filed on, or after, January 1, 2021, "may be cited for persuasive purposes"). Further, upon request, an applicant must sign a release form that allows disclosure to the Illinois State Police of "limited mental health institution admission information *** concerning the applicant for the sole purpose of determining whether the applicant is or was a patient in a mental health institution and disqualified because of that status from receiving a [FOID] Card." *Id.* § 4(a)(3). The applicant must also submit a photograph and provide proof of residence in Illinois. *Id.* § 4(a)(a-20). If an applicant meets the requirements set forth in the statute, the applicant "shall be entitled to a [FOID] Card upon the payment of a $10 fee and applicable processing fees" and the Illinois State Police shall issue the card within 30 days from the date it received the application. *Id.* § 5(a); *Gunn,* 2023 IL App (1st) 221032, ¶ 16.

¶ 15    The second amendment of the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear

6

Arms, shall not be infringed." U.S. Const., amend II. The second amendment right was made "fully applicable to the States" through the fourteenth amendment of the United States Constitution (U.S. Const., amend XIV). *McDonald v. City of Chicago*, Ill., 561 U.S. 742, 750 (2010).

¶ 16       In *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court held that the "Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *Bruen,* 597 U.S. at 17. Most recently, in *Bruen*, the United States Supreme Court stated that, consistent with *McDonald* and *Heller*, the second and fourteenth amendments "protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 8-10. In *Bruen*, the court set forth a new standard when analyzing second amendment challenges to firearm regulations. *Id.* at 24; see *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 24. The Court explained that, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen,* 597 U.S. at 24. If the second amendment covers the conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*; see *Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 20. In analyzing the historical tradition of a firearm regulation, the "historical inquiry" a court must conduct involves "reasoning by analogy." *Bruen,* 597 U.S. at 28. The Court explained that "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.' " *Id.* at 28-29 (quoting C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)).

¶ 17       In *Bruen*, the petitioners challenged a licensing law in New York that required an individual to obtain an unrestricted license to carry a firearm outside of the home for self-defense. *Bruen*, 597 U.S. at 11-12; *Gunn,* 2023 IL App (1st) 221032, ¶ 12. To obtain a license, an applicant

had to prove "proper cause," which, as interpreted by the New York courts, required demonstrating " 'a special need for self-protection distinguishable from that of the general community.' " *Id.* at 12. The "special need" standard generally required evidence " 'of particular threats, attacks or other extraordinary danger to personal safety.' " *Bruen*, 597 U.S. at 12-13 (quoting *In re Martinek,* 294 App. Div. 2d 221, 222 (2002)). After applying the law under the new test, the Court concluded that the proper cause requirement in New York's licensing regime violated the fourteenth amendment because it "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 71.

¶ 18        In its analysis, the Court defined New York's law as a "may-issue" licensing law under which authorities had discretion to deny a license "even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license." *Id.* at 14. The Court distinguished the "may-issue" laws from the "shall-issue" laws, under which licensing officials do not have discretion and must issue a license whenever an applicant meets the threshold, objective requirements. *Id.* at 13, 38 n. 9; see *Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 22. The Court stated in a footnote that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' " *Id.* at 38 n. 9 (quoting *Drake v. Filko*, 724 F.3d 426, 442 (CA3 2013) (Hardiman, J., dissenting)). It stated that "[b]ecause these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id.* (quoting *Heller*, 554 U.S. 570). The court noted that the shall-issue regimes "which often require applicants to undergo a background check or pass a

8

firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' " *Id.*

¶ 19    In Justice Kavanaugh's concurring opinion, he further explained that the Court's decision did not "affect the existing licensing regimes—known as 'shall issue' regimes—that are employed in 43 states" and concluded that the states "that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so." *Id*. at 79-80; see *Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 23. Justice Kavanaugh noted that shall-issue licensing regimes "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Bruen*, 597 U.S. at  80. He explained that shall-issue regimes "do not grant open-ended discretion to licensing officials and do not require a showing of some special need apart from self-defense." *Id.*

¶ 20    Turning back to the instant case, Pitts argues that under the new analysis set forth in *Bruen*, the requirement in the AUUW statute that he be issued a FOID card in order to exercise his right to carry a firearm outside the home violates the second amendment because it is inconsistent with the nation's historical tradition of firearm regulation. He asserts there are no historical analogues for the AUUW statute's requirement that individuals be issued a FOID card before they can exercise their right to carry a firearm.

¶ 21    In *People v. Gunn*, 2023 IL App (1st) 221032, ¶¶ 19, 32, this court has previously concluded that the FOID Card Act complies with federal law. In *Gunn*, the defendant was convicted of AUUW in that, as relevant here, he carried a loaded firearm outside the home without possessing a valid FOID card. *Id.* ¶¶ 5, 18. Relying on *Bruen*, the defendant argued that the FOID Card Act was facially unconstitutional and violated the right to bear arms, as it was inconsistent

with the nation's historical tradition of firearm regulation. *Id.* ¶¶ 7, 17. However, this court disagreed with the defendant's argument. *Id.* ¶ 17. In doing so, this court found that *Bruen* "explicitly acknowledged that background checks, which are the cornerstone of the FOID Card Act, are permissible" and that there was "no need for us to engage in historical analysis of firearm regulation when the Supreme Court has already done so and explicitly sanctioned the use of background checks." *Id.* ¶ 19 (citing *Bruen*, 597 U.S. at 38 n.9). This court further explained that Illinois is a shall-issue state and concluded:

> "In *Bruen*, the United States Supreme Court had the opportunity to denounce states' gun regulation schemes outright. However, it did not do so. Rather, it explicitly acknowledged that *shall-issue* regimes, which are aimed at ensuring that only law-abiding citizens are allowed to possess and carry firearms, do not prevent citizens from exercising their second amendment rights. Illinois is a *shall-issue* state with clearly defined, objective criteria regarding firearm possession and carry." (Emphasis in original.) *Id.* ¶ 32.

This court also explained that unlike New York's law, Illinois "does not have discretion to deny an applicant based on requirements or factors not explicitly set forth in the statute." *Id.* ¶ 16.

¶ 22    Here, we follow *Gunn* and conclude that the section in the AUUW statute under which Pitts was convicted is not facially unconstitutional and *Bruen* does not provide a basis to invalidate it. See *id.*; *Kuykendoll*, 2023 IL App (1st) 221266-U, ¶¶ 11, 14-27 (following *Gunn* and concluding that *Bruen* provided no basis to declare unconstitutional the AUUW statute that required the defendant to obtain a FOID Card and concealed carry license before possessing a firearm in public). As previously noted, under the FOID Card Act, the Illinois State Police "shall issue" a license if the applicant meets the objective criteria. *Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 25 (explaining that "the Illinois State Police 'shall issue' a license to any applicant who meets the

well-defined, objective criteria contained therein."); *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 61 ("Illinois is what *Bruen* calls a 'shall-issue' state because the Illinois State Police shall issue a FOID card and [concealed carry license] to any applicant who meets the respective statutory criteria."). And thus, unlike New York's "may-issue" licensing regime found unconstitutional in *Bruen*, Illinois is a shall-issue state, which the Court did not invalidate in *Bruen*. *Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 25 ("Illinois employs the kind of shall-issue regime endorsed by the *Bruen* Court.").

¶ 23    Pitts also contends that section 24-1.6(a)(1), (3)(C) of the AUUW statute violates the second amendment because it violates an individual's second amendment right to carry a ready-to-use handgun for self-defense outside the home. However, Pitts was not convicted of AUUW because he carried a ready-to-use handgun for self-defense outside the home. Rather, he was convicted under subsection (a)(1), (3)(C) in that he carried a firearm in public without having been issued a currently valid FOID card.

¶ 24    Pitts argues that section 24-1.6(a)(1), (3)(A) of the AUUW statute amounts to a flat ban on carrying ready-to-use handguns for self-defense outside the home. However, Pitts was not convicted under this section of the AUUW statute. As previously discussed, he was convicted under section 24-1.6(a)(1), (3)(C), in that he carried a firearm in public without a valid FOID card. Thus, we will not address Pitts' argument. See *People v. Minnis*, 2016 IL 119563, ¶ 13 ("[A] court will not consider a constitutional challenge to a criminal statutory provision under which a defendant has not been charged."). Lastly, Pitts challenges his conviction citing subsection (a)(c) of the AUUW statute. This subsection provides exceptions that do not apply and are not relevant to his conviction under subsection 24-1.6(a)(1), (3)(C).

¶ 25                            III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 27    Affirmed.