2024 IL App (1st) 221178-U

No. 1-22-1178

Filed May 30, 2024

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 1375 |
| | ) | |
| MICHAEL SANTILLANES, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Aggravated unlawful use of a weapon conviction affirmed over facial constitutional challenge.

¶ 2     Following a bench trial, Michael Santillanes was convicted of three counts of aggravated unlawful use of a weapon (AUUW) and sentenced to two years in prison. On appeal, he asserts the provision of the AUUW statute that criminalizes possession of a firearm in public without having been issued a valid firearm owner's identification (FOID) card is facially unconstitutional

in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). We disagree and affirm the conviction.[1]

¶ 3                                                    I. BACKGROUND

¶ 4          At trial, Andrew Szparkowski testified his car broke down near the intersection of West 67th Street and South Keating Avenue in Chicago on the evening of December 27, 2019. As Szparkowski was examining his car's engine, a man he identified as Santillanes stepped down from a Hummer SUV parked nearby. Santillanes approached Szparkowski and told him to get out of the neighborhood. Szparkowski replied that he was waiting for a friend who was on his way and that he would leave once they jumpstarted the car. Santillanes said that was fine and began walking away. He turned, however, and pointed a handgun at Szparkowski, telling him there would be bullet holes in his car if it were not gone by morning. Szparkowski called the police a short time later.

¶ 5          Chicago Police Officer Evans[2] testified he responded to Szparkowski's call. Upon reaching the location, he observed a Hummer SUV parked on the street. Officer Evans approached the passenger side of the vehicle, where he found Santillanes, the sole occupant, seated. A search of Santillanes's person revealed nothing, but Officer Evans discovered a Taurus 9mm semi-automatic handgun on the rear seat. A computer inquiry revealed Santillanes did not have a valid FOID card or concealed carry license (CCL). The Hummer SUV was not registered to Santillanes, and the handgun was not registered to anyone.

¶ 6          The parties stipulated that Santillanes did not possess a valid FOID card or CCL at the time of the offense. Santillanes did not testify or present any evidence.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.
    [2]The record does not contain Officer Evans's first name.

¶ 7        The trial court found Santillanes guilty of three counts of AUUW: one count premised on lack of a CCL and FOID card, the second premised on lack of a CCL, and the third premised on the lack of a FOID card. The court acquitted him of a fourth count, which alleged he made a threat of violence against Szparkowski. The court sentenced Santillanes to two years in prison on the count premised on the lack of a FOID card. The other two counts merged. This appeal followed.

¶ 8                                        II. ANALYSIS

¶ 9        Santillanes argues that, based on *Bruen*, criminalizing the public carrying of a firearm without a valid FOID card violates the Second Amendment. For that reason, Santillanes asserts that his AUUW conviction must be vacated. In his opening brief, Santillanes takes issue with the FOID Card Act's (430 ILCS 65/0.01 *et seq*. (West 2018)) requirements, which are a precondition for a person to lawfully acquire or possess a firearm in Illinois. He contends the requirement to obtain a FOID card burdens the right to carry firearms in public for self-defense. Santillanes then argues that historical tradition from the 18th and 19th century precludes burdening that right by requiring a person to first obtain a license. He also submits that historical firearm regulation was not punitive but either required certain persons to post a surety or imposed small fines. Santillanes further insists that a footnote in the *Bruen* decision—appearing to approve of state firearm "shall issue" licensing schemes like the one in Illinois—is *dicta* and should not control the issue.

¶ 10        In his reply brief, however, Santillanes states that he is not asserting an " 'unqualified right' " to public carry "that cannot be burdened by any restriction whatsoever." He also observes that the State's counterarguments are "overly focused on the perspective of an applicant seeking a license under the FOID Card Act" and explains that his challenge pertains to "the punitive AUUW statute under which he was convicted." Santillanes then emphasizes a comparison between those penalties imposed by historical regulations versus the criminal AUUW statute.

¶ 11     The arguments in Santillanes's briefs are not consistent. He initially asserts his challenge is to the criminalization of possessing a firearm without a FOID card, but he then devotes much of his brief to attacking the FOID Card Act itself as burdening the right to bear arms. In contrast, Santillanes's reply brief suggests he is not challenging the FOID Card Act, but only the penalty for violating it, which is contained in the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2018)). This inconsistency makes our review difficult, as it is unclear what precise question is before us. We are entitled to have issues clearly defined with pertinent authority and coherent arguments presented. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 50. Nevertheless, Santillanes asserts his claim is a facial challenge to the portion of the AUUW statute making firearm possession without a FOID card a criminal offense subject to criminal penalties, including imprisonment.

¶ 12     Facial challenges to a statute may be raised at any time. *People v. Villareal*, 2023 IL 127318, ¶ 13. A party raising a facial challenge must establish that the statute is unconstitutional under any possible set of facts. *People v. Harris*, 2018 IL 121932, ¶ 38.

¶ 13     The *Bruen* decision "announced a new analytical framework for evaluating the constitutionality of firearm regulations." *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 68. Previously, if the regulated activity fell within the scope of the Second Amendment, courts could weigh the severity of a firearm regulation—the means—against the ends the government sought to achieve. *Id*. ¶ 67. In *Bruen*, the Supreme Court condemned any means-ends analysis and instead required the government to " 'justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.' " *Id*. ¶ 69 (quoting *Bruen*, 597 U.S. at 24).

¶ 14     Under the *Bruen* framework, the government must point to a historical representative analogue from before, during, and after the Nation's founding as precedent to justify its firearm

regulation. *Id.* ¶¶ 70-71. The historical analogue need not be exact, but should be " 'relatively similar' " to the challenged modern-day regulation. *Id.* ¶ 72 (quoting *Bruen*, 597 U.S. at 29). The inquiry would turn on "whether the 'modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.' " *Id.* ¶ 73 (quoting *Bruen*, 597 U.S. at 29).

¶ 15    In *Bruen*, the Court struck down New York's licensing regime that required applicants to demonstrate "some additional special need" to carry a handgun publicly, rather than "issu[ing] licenses to carry based on objective criteria." *Bruen*, 597 U.S. at 11. The Court differentiated between "may-issue" licensing regimes like New York's, where "authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria," and "shall-issue" licensing regimes in 43 states, where "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on perceived lack of need or suitability." *Id.* at 13-14. The Court included Illinois among the 43 "shall-issue" regimes. *Id.* at 13 n.1. In a footnote, the Court stated:

> "To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' [Citation.] Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. [Citation.] Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' [Citation.] And they likewise appear to contain

only 'narrow, objective, and definite standards' guiding licensing officials, [citation] rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' [citation] features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id.* at 38 n.9.

¶ 16    In *People v. Gunn*, 2023 IL App (1st) 221032, a defendant sought reversal of his AUUW conviction premised on lack of a FOID Card. Like Santillanes, Gunn argued his conviction could not stand in light of *Bruen*. *Id.* ¶¶ 7, 17. This court rejected Gunn's challenge, noting the Supreme Court's differentiation between "shall-issue" and "may-issue" licensing regimes. *Id.* ¶ 19 (citing *Bruen*, 597 U.S. at 38 n.9). We remarked, "[t]here is no need for us to engage in a historical analysis of firearm regulation when the Supreme Court has already done so and explicitly sanctioned the use of background checks." *Id.*

¶ 17    Insofar as Santillanes challenges the FOID Card Act itself, his challenge offers no reason to revisit the issue we resolved in *Gunn*.[3] We decline to consider the Supreme Court's footnote as mere *obiter dicta*,[4] as the Court's distinction between "may-issue" and "shall-issue" licensing regimes was essential to *Bruen*'s holding that New York's law was unconstitutional. Nor does the footnote's indication that the Court would not "rule out" challenges to "shall-issue" licensing regimes prompts us to conduct a historical comparison. The Court contemplated that such a

---

[3]This court has rejected similar *Bruen*-based challenges in several unpublished orders. See *People v. Smith*, 2023 IL App (4th) 220958-U, *People v. Kuykendoll*, 2023 IL App (1st) 221266-U, *People v. Richardson*, 2024 IL App (1st) 221508-U.

[4]"*Obiter dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case." *People v. Williams*, 204 Ill. 2d 191, 206 (2003).

challenge could be cognizable when licensing regimes impose obstacles to public carry such as lengthy wait times or exorbitant fees. In no way, however, can the Court's comment be read to endorse an attack on a licensing requirement itself. But that is the sort of challenge Santillanes asserts regarding the FOID Card Act—an attack on the basic requirement to obtain a license as a precondition to carry a firearm in public for self-defense. Accordingly, we follow *Gunn* and reject Santillanes's challenge to the FOID Card Act.

¶ 18 We turn to the thrust of Santillanes's challenge. Unlike Gunn, who solely challenged the FOID Card Act, Santillanes argues that the Second Amendment prohibits the imposition of criminal penalties for carrying a firearm in public without a valid FOID card. He contends that historical analogues restricting public carry only required posting a surety or imposed small fines. Thus, in Santillanes's view, the analytical framework announced in *Bruen* should lead us to find that the criminal penalties of the AUUW statute are contrary to the historical tradition of firearm regulation and therefore unconstitutional.

¶ 19 Taken to its logical conclusion, Santillanes's argument would have us interpret the Second Amendment to prohibit a state from imposing criminal penalties for violating a firearm licensing regulation, even if the regulation itself passes constitutional muster. No court has taken such a leap. We are aware of no authority that supports limitations on penalties for otherwise valid firearm regulations and Santillanes does not cite any. Second Amendment jurisprudence has been concerned with protecting the right to armed self-defense from burdens imposed by regulations, not protecting individuals from penalties if they choose to disregard valid regulations. Since the Second Amendment has never been interpreted to bar a state from making public firearm possession in violation of a valid regulation a criminal offense, Santillanes facial challenge fails.

¶ 20    Separate from his appeal of the AUUW conviction in this case, Santillanes seeks vacatur of two prior AUUW convictions. Unlike this case, Santillanes was previously convicted under a subsection of the AUUW statute that was found to amount to a flat ban on firearm possession outside the home and facially invalid under the second amendment. See *People v. Aguilar*, 2013 IL 112116, ¶¶ 19-22. Such convictions are void and may be attacked at any time in any court. *In re N.G.*, 2018 IL 121939, ¶ 57. The State agrees that Santillanes prior AUUW convictions are void and should be vacated. Thus, we vacate both convictions.

¶ 21                                III. CONCLUSION

¶ 22    For these reasons, we affirm the judgment of the trial court in this case and vacate the judgments of conviction in case number 11 CR 00131 and case number 11 CR 09407.

¶ 23    Appeal No. 1-22-1178 Affirmed.

¶ 24    Case No. 11 CR 00131 Judgment vacated.

¶ 25    Case No. 11 CR 09407 Judgment vacated.