2025 IL App (1st) 221754-U

No. 1-22-1754

Filed June 25, 2025

Third Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 6304 |
| | ) | |
| DARREN MACLIN, | ) | Honorable |
| | ) | Domenica A. Stephenson |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Reyes and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Evidence of a shooting was admissible when the defendant was tried only for illegally possessing a firearm in the same course of conduct. The armed habitual criminal statute does not violate the second amendment to the United States Constitution. Defendant's mandatory life sentence does not violate the federal or state constitutions.

¶ 2    A jury found Darren Maclin guilty of armed habitual criminal (AHC). Because of his multiple prior felony convictions, Maclin was sentenced to a mandatory term of natural life imprisonment. On appeal, Maclin argues he did not receive a fair trial when the State elicited evidence of a shooting he was not charged with. Alternatively, he claims the AHC statute violates the second amendment to the United States Constitution (U.S. Const., amend. II) and his

mandatory life sentence violates both the eighth amendment to the Unites States Constitution (*id.*, amend. VIII) and proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11), as applied to his circumstances. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4        Maclin was indicted for AHC and lesser included firearm offenses stemming from a June 4, 2020, incident in which Loren Johnson was fatally shot. The State indicated it would introduce evidence at trial that Maclin fired a handgun during the incident, but they were not alleging he shot Johnson. In a motion *in limine*, Maclin asked the trial court to bar evidence of the shooting, arguing it was irrelevant and prejudicial since he was not charged with any offense related to the shooting, only possession of a firearm. The court permitted the State to introduce evidence of the shooting as it was probative of possession and whether the item was, in fact, a firearm. But the court would instruct the jury to consider the evidence only for the limited purposes of the defendant's identification, presence, and knowledge.[2] The court also prohibited the State from eliciting evidence that Johnson died from the gunshot wound, finding it to be unfairly prejudicial.

¶ 5        According to trial witnesses, Maclin and Johnson arrived together at an outdoor party in the evening of June 4, 2020, near the intersection of East 91st Street and South Buffalo Avenue (91st & Buffalo) in Chicago. The two approached a group involved in a dice game. Maclin argued with Clarence Ray about a debt Ray claimed Maclin owed him from a prior dice game. After shouting some profanities, Maclin produced a handgun and began firing.

¶ 6        Beverly Ray, who was sitting on the curb, observed Maclin raise a handgun and noticed that it had a long clip. Pete Wardell, who was standing five feet behind Maclin, noticed the handgun

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.
[2]See Illinois Pattern Jury Instructions, Criminal. No. 3.14 (approved Oct. 17, 2014).

was a silver semi-automatic with a black grip. Both Beverly and Wardell saw multiple flashes from Maclin's handgun. Beverly believed others were shooting, as well.

¶ 7    Nick Ray was inside his home when he heard more than 20 shots fired. He went outside and observed Maclin alone in the street holding a silver handgun with a black grip. Nick noticed that it was in the slide lock position, which he understood to mean all rounds in the magazine had been fired. Nick saw Johnson lying in the street.

¶ 8    Police arrived a short time later and discovered Johnson with a gunshot wound to the chest. Maclin, who had left the scene, returned. Beverly exclaimed that Maclin had shot Johnson and began fighting with him. The following day, Nick identified Maclin in a photo array as the person he saw holding a handgun the previous night. Wardell gave a videotaped interview the following month, in which he told police he observed Maclin fire shots on June 4.

¶ 9    Beverly, Wardell, and Nick each identified Maclin in video segments of the incident taken from a nearby surveillance camera. In the video, the individual they identified as Maclin holds a handgun and fires it multiple times.

¶ 10    Investigators found over 30 shell casings of three different calibers in the vicinity of 91st & Buffalo, indicating more than one firearm had been fired. No firearm was recovered at the scene or on Maclin's person, though he was shot in the buttock. The parties stipulated that Maclin had two prior qualifying felony convictions.

¶ 11    The jury found Maclin guilty of AHC. Because the conviction was Maclin's third Class X offense within 20 years, he was subject to a mandatory term of life imprisonment and sentenced accordingly. 730 ILCS 5/5-4.5-95(a)(1)-(5) (West 2020). This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13                              A. Evidence of Other Crimes

¶ 14        First, Maclin argues evidence of Johnson's fatal gunshot wound was improperly admitted as prejudicial "other crimes" evidence. The trial evidence, however, did not disclose Johnson died from the wound. The trial court barred the State from eliciting that fact and the State complied. At most, Johnson's death was inferable from Nick Ray's testimony that seeing the way Johnson was lying reminded him of his cousin's killing. His testimony, however, was invited by defense counsel's cross-examination. Nick was questioned as to why he did not speak with anyone, including police, on the night of the shooting, despite claiming he observed Maclin holding a handgun. On redirect, Nick explained he went home without speaking to anyone because he was in shock. When asked why he was in shock, the court allowed Nick to explain over the defense's objection that observing Johnson lying on the ground reminded him of his cousin who had been killed.

¶ 15        Also important, the State did not assert, nor did the evidence establish that Maclin, in fact, shot Johnson. As no witness testified they observed Maclin do so and no firearm was recovered from Maclin, he was not linked to the bullet that struck Johnson. Moreover, since shell casings of three different calibers were found, the evidence demonstrated that Johnson could have been shot by some other individual.

¶ 16        In any event, evidence of the shooting was not evidence of other crimes within the meaning of the other crimes doctrine. That doctrine bars the State from introducing evidence of crimes for which the defendant is not on trial if relevant only to establish their propensity to commit crime. *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991). But "[t]he fact that the challenged evidence consists of an uncharged offense does not, standing alone, require it to be analyzed under other-

crimes principles." *People v. Pikes*, 2013 IL 115171, ¶ 20. Because the other crimes doctrine is "an aspect of the rule that the prosecution may not introduce evidence of a character trait of the accused," it is only implicated when evidence concerns a crime committed by the defendant. *Id.* ¶ 16. As noted, the State did not allege, nor did the evidence establish, that Maclin shot Johnson. Thus, evidence of the shooting was not introduced as evidence of Maclin's character and the other crimes doctrine was not implicated.

¶ 17        Furthermore, the other crimes doctrine is concerned with crimes that are "separate, distinct, and disconnected" from the crime for which the defendant is charged. *Id.* If the evidence is part of the course of conduct or a continuing narrative of the charged offense, ordinary principles of relevancy apply, and the other crimes doctrine is not implicated. *Id.* ¶ 19; *People v. Rutledge*, 409 Ill. App. 3d 22, 25 (2011); *People v. Saulsberry*, 2021 IL App (2d) 181027, ¶ 50. Here, evidence of Maclin firing a handgun was part of the course of conduct of the charged offense—possession of a firearm. It was not "separate, distinct, and disconnected." Moreover, the evidence was relevant to prove that Maclin possessed a firearm. And evidence that he fired it proved the item he possessed was, in fact, a handgun.

¶ 18        For these reasons, we find that evidence of the shooting was properly admitted.

¶ 19                        B. Constitutionality of the AHC Statute

¶ 20        Next, Maclin challenges the constitutionality of the AHC statute based on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). In *Bruen*, the Court established a two-step test to evaluate firearm regulations. First, courts must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If so, the conduct is presumptively protected, and the government "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

To clear this hurdle, the government must point to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." (Internal quotation marks omitted.) *Id.* at 27.

¶ 21        Maclin argues that, despite his prior felony convictions, the second amendment's plain text covers the conduct the AHC statute regulates—firearm possession—and the State cannot justify the AHC statute as consistent with historical tradition. We recently addressed a substantively identical claim in *People v. Macias*, 2025 IL App (1st) 230678. There, we followed the decision in *People v. Brooks*, 2023 IL App (1st) 200435, and concluded felons are covered by the second amendment, but the AHC statute is consistent with historical tradition. *Macias*, 2025 IL App (1st) 230678, ¶¶ 28-29. Like the defendant in *Macias*, Maclin argues the historical laws *Brooks* relied on are insufficiently analogous to satisfy the *Bruen* test. We are not persuaded and continue to follow *Brooks*. Thus, we reject Maclin's facial challenge to the AHC statute.

¶ 22                            C. As-applied Challenge to Mandatory Life Sentence

¶ 23        Last, Maclin argues that even if the AHC statute is valid, his mandatory natural life sentence violates the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). His life sentence results from the Habitual Criminal Act (Act) (730 ILCS 5/5-4.5-95 (West 2020)), but he claims the Act as applied to him is unconstitutional because his operative offense—AHC—involved otherwise constitutionally protected conduct—firearm possession. Thus, he asserts that the Act should be viewed "through the lens of *Bruen*" and the State must justify the Act as consistent with historical tradition from the founding period for sentencing repeat offenders. Maclin then argues there is no historical analogue for a mandatory life sentence based on a

conviction for weapon possession. Thus, he requests we remand for the trial court to resentence him to a term of years.

¶ 24    Our supreme court has held that the Act violates neither the proportionate penalties clause nor the eighth amendment. *People v. Dunigan*, 165 Ill. 2d 235, 244-48 (1995). We are unpersuaded that *Bruen* requires a different result when the Act is triggered by a firearm offense. In the criminal context, *Bruen*'s two-step test is implicated by prosecution for a criminal offense where the regulated conduct is covered by the text of the second amendment. The Act, however, is a sentencing statute, not an offense. "[H]abitual criminal statutes do not define a new or independent criminal offense. [Citations.] Rather, such statutes simply prescribe the circumstances under which a defendant found guilty of a specific crime may be more severely punished because that defendant has a history of prior convictions." *Id*. at 242.

¶ 25    In addition, nothing in *Bruen* indicates that its test applies to other constitutional provisions such as the eighth amendment. Nor has Maclin cited any authority for applying *Bruen* to a general sentencing statute. As we have observed previously, "[w]e are aware of no authority that supports limitations on penalties for otherwise valid firearm regulations." *People v. Santillanes*, 2024 IL App (1st) 221178-U, ¶ 19. For these reasons, we find that we need not view the Act "through the lens of *Bruen*."

¶ 26    Finally, we find Maclin's reliance on *People v. Miller*, 202 Ill. 2d 328 (2002), unpersuasive. In *Miller*, our supreme court found a mandatory natural life sentence imposed on a 15-year-old who acted as a lookout in a gang-related double murder "particularly harsh and unconstitutionally disproportionate." *Id*. at 341. This case does not compare favorably. At the time of this offense, Maclin was 56 years of age and had 14 felony convictions for which he received prison sentences. These included attempted murder, home invasion, attempted armed robbery, eight burglaries, one

attempted burglary, possession of a stolen motor vehicle, and a prior AHC—all committed when Maclin was over age 21. A mandatory natural life sentence as applied here is not "so wholly disproportionate to the offense as to shock the moral sense of the community." *Id*. at 338.

¶ 27                                    III. CONCLUSION

¶ 28          Based on the foregoing, we affirm the judgment of the circuit court.

¶ 29          Affirmed.