2025 IL App (1st) 231566-U

FIRST DISTRICT,
SIXTH DIVISION
February 21, 2025

No. 1-23-1566

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 22 CR 03097 01 |
| ZARRIEL TROTTER, | ) | |
| | ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) Statute prohibiting possession of a firearm without a valid FOID Card and possession of a loaded and accessible firearm without a valid CCL is not facially unconstitutional under *New York State Rifle and Pistol Association, Incorporated v. Bruen*, 597 U.S. 1 (2022). (2) Admission of officer's testimony regarding his prior encounter with an armed individual was harmless.

¶ 2    A jury convicted defendant Zarriel Trotter of aggravated unlawful use of a weapon (AUUW). Trotter was sentenced to three years' imprisonment. On appeal, he argues the AUUW statute is facially unconstitutional because it deprives him of his second amendment freedom to carry a handgun on a public sidewalk for self-defense, pursuant to *New York State Rifle and*

*Pistol Association, Incorporated v. Bruen*, 597 U.S. 1 (2022). He additionally argues the trial court erred in permitting the State to introduce "generalized profile evidence." We affirm.

¶ 3                                              I. BACKGROUND

¶ 4        At 1:30 p.m. on December 18, 2021, a team of four tactical police officers were riding in an unmarked squad car on routine patrol: Officer Brett Hon (the driver), Officer Steven Sreniawski, Officer Mamadou Diarra, and Officer Matthew Ruppert. Trotter and a Black male companion were walking on the side of the street in the opposite direction. Sreniawski and Diarra observed Trotter altering his footpath to conceal himself behind his companion while he was walking.

¶ 5        Trotter aroused Sreniawski's suspicions because of the way he was holding his right arm while walking with his hand inside his coat pocket. Sreniawski testified that Trotter "was grasping what appeared to be an object in that front right pocket *** [with] his elbow tense and it was raised as opposed to relaxed." Sreniawski described this elbow posture as a "ready position" and believed it indicated that Trotter "was grasping what appeared to be an object in the right pocket." Sreniawski testified over objection that, as a police officer, he had seen individuals walking around with a hand in their pocket in that same manner for a prolonged period, and he previously had such an encounter "where it turned out that person had a gun in their pocket."

¶ 6        Based on these observations, the officers drove toward Trotter. Sreniawski testified it was his plan to approach Trotter for a field interview "to see if [he] was armed." When the car was around 20 to 30 feet away from Trotter and his companion, both men began to run. The officers pursued them in their vehicle. After a while, Trotter and his companion split up to run in different directions. Sreniawski, Diarra, and Ruppert exited the squad car to pursue Trotter on foot, while Hon pursued Trotter's companion.

¶ 7        Sreniawski, Diarra, and Ruppert chased Trotter to a westbound driveway, which ended in a fence surrounding an elementary school yard. Sreniawski testified that Trotter attempted to scale the fence, at which time he produced from his right front coat pocket a firearm that he threw over the fence. Sreniawski detained Trotter and placed him in handcuffs. Diarra also observed Trotter approach the fence and throw a black firearm "in front of him onto a grass area located on school grounds." After Trotter was detained, Diarra "jumped the fence and retrieved the firearm." He later checked the gun and found it was loaded.

¶ 8        At trial, the parties stipulated that Trotter did not have a valid Firearm Owners Identification (FOID) Card or Illinois Concealed Carry License (CCL) on the date of the offense. Trotter called no witnesses in his defense. He was convicted of violating subsections (a)(1), (a)(3)(A-5), and (a)(3)(C) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2020)), which prohibit possession of a firearm without a valid FOID Card and possession of a loaded and accessible firearm without a valid CCL.

¶ 9                                II. ANALYSIS

¶ 10                       A. Constitutionality of the AUUW Statute

¶ 11        Trotter argues subsections (a)(1), (a)(3)(A-5), and (a)(3)(C) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5)(C) (West 2020)) are unconstitutional on their face because they violate the second amendment as interpreted by the Supreme Court in *Bruen*, 597 U.S. 1. Although Trotter raises this issue for the first time on appeal, facial challenges to the constitutionality of a statute may be raised at any time. *In re N.G.*, 2018 IL 121939, ¶ 43. A facially unconstitutional statute is void *ab initio*, and a defendant convicted under a facially unconstitutional statute is entitled to have that conviction vacated. *People v. McFadden*, 2016 IL 117424, ¶¶ 17, 19-20.

¶ 12　　　　A party challenging the constitutionality of a statute "carr[ies] the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional." (Internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶ 23. To succeed in a facial challenge, Trotter must show the statute is unconstitutional under any set of facts; the specific facts relating to him are irrelevant. *People v. Thompson*, 2015 IL 118151, ¶ 36. If there exists a situation in which the statute could be validly applied, a facial challenge must fail. *Rizzo*, 2016 IL 118599, ¶ 24.

¶ 13　　　　The AUUW statute under which Trotter was convicted provides:

　　　　　　"A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

　　　　　　　　(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; *** [and]

　　　　　　　　　　　　* * *

　　　　　　　　(3) One of the following factors is present:

　　　　　　　　　　(A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act; or

　　　　　　　　　　　　* * *

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1.6(a) (West 2020).

¶ 14    The second amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, 597 U.S. at 24, the Supreme Court held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." The *Bruen* Court applied this test to strike down a New York law requiring an applicant to show "proper cause exists" for an unrestricted license to "have and carry" a concealed firearm outside of his home or business. *Id.* at 12.

¶ 15    In reaching this holding, the Court distinguished between "may-issue" and "shall-issue" licensing regimes. New York had a "may-issue" regime, since "authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license." *Id.* at 14-15. By contrast, 43 states, including Illinois, have "shall-issue" regimes "where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id.* at 14. The *Bruen* Court explicitly stated that its analysis should not be interpreted to suggest the unconstitutionality of a "shall-issue" license regime "under which a general desire for self-defense is sufficient to obtain a [permit]." *Id.* at 38 n.9.

¶ 16　　　　In *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 61, we held, since Illinois' firearm regulation scheme operates as a "shall-issue" regime, subsections (a)(3)(A-5) and (a)(3)(C) of the AUUW statute are not facially unconstitutional under *Bruen*. Numerous panels of this court have likewise upheld the constitutionality of Illinois' licensing scheme. See, *e.g.*, *People v. Gunn*, 2023 IL App (1st) 221032, ¶¶ 19, 29-30 (rejecting argument that the FOID Act and Concealed Carry Act are unconstitutional under *Bruen*); *People v. Smith*, 2023 IL App (4th) 220958-U, ¶¶ 14-16 (rejecting argument that Illinois's AUUW statute is facially unconstitutional since *Bruen* does not affect shall-issue regimes); *People v. Kuykendoll*, 2023 IL App (1st) 221266-U, ¶ 25 (same).

¶ 17　　　　Trotter urges us to reject *Hatcher*, arguing that *Bruen* footnote 9 is "mere *dicta*." However, *dicta* from a court of last resort are binding on lower courts in the absence of contrary authority. *People v. Williams*, 204 Ill. 2d 191, 206-07 (2003); see also *Smith*, 2023 IL App (4th) 220958-U, ¶ 21 (although defendant "urge[d]" the court "to dismiss this distinguishing language as mere *dicta*," we declined to "ignore *Bruen*'s unambiguous efforts to exclude shall-issue regimes from its decision").

¶ 18　　　　Trotter further argues that Illinois' FOID Card and CCL regimes operate as a "may-issue" rather than a "shall-issue" regime under *Bruen*. Not so. The *Bruen* Court explicitly identifies Illinois as a "shall-issue" state. *Bruen*, 597 U.S. at 13 fn. 1. Also, it is clear that Illinois employs the kind of "shall-issue" regime endorsed in *Bruen*, since both the FOID Card Act and the Concealed Carry Act provide that the Illinois State Police "shall issue" a license to any applicant who meets the well-defined, objective criteria contained therein. 430 ILCS 65/5 (West 2020); 430 ILCS 66/10 (West 2020).

¶ 19      Trotter's reliance on *United States v. Rahimi*, 602 U.S. 680 (2024), is misplaced. First, *Rahimi* does not involve the constitutionality of a shall-issue regime. Second, it does not contradict the *Bruen* Court's clear statement that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Bruen*, 597 U.S. at 39 fn. 9. Thus, in accord with our prior decisions in *Hatcher*, *Gunn*, *Smith*, and *Kuykendoll*, we once again find that *Bruen* provides no basis to find the AUUW statute unconstitutional.

¶ 20                              B. "Generalized Profile Evidence"

¶ 21      Trotter additionally argues that the introduction of "generalized profile evidence" during Sreniawski's testimony constitutes reversible error. We disagree. Assuming without deciding that the challenged testimony was irrelevant as Trotter posits, the admission was at most harmless error, for the evidence is uncontroverted that two officers saw Trotter throw the gun from his pocket. It makes no difference that other individuals had a gun in their pocket. Trotter clearly did, and the evidence against him is overwhelming.

¶ 22      Sreniawski testified, over defense objection, that he had previously seen individuals "walking around with their hand in their pocket in that same manner [as Trotter] for a prolonged period of time." The following colloquy then occurred:

> "PROSECUTOR: And in those times that you observed individuals with their hand in their pocket the same way the defendant had, had you ever had an encounter where it turned out that person had a gun in their pocket?
>
> DEFENSE COUNSEL: Objection. Relevance.
>
> THE COURT: Overruled. He's talking about why he may have acted the way he did at the date and time in question and he's putting some reference and context into it. Respectfully overruled.

SRENIAWSKI: Yes."

Citing *People v. Brown*, 232 Ill. App. 3d 885 (1992), Trotter argues that this testimony was improperly admitted because it was not relevant to his guilt or innocence, nor was it necessary for the jury to understand Sreniawski's testimony.

¶ 23    In general, "all relevant evidence is admissible unless otherwise provided by law." *People v. Cruz*, 162 Ill. 2d 314, 348 (1994). Evidence is "relevant" if it tends to prove or disprove a disputed fact or render a matter in issue more or less probable. Ill. R. Evid. 401 (eff. Jan. 1, 2011). An evidentiary error is harmless and does not require reversal where there is no reasonable probability that the jury would have acquitted the defendant absent the error. *People v. Taylor*, 2013 IL App (1st) 110166, ¶ 16; *People v. Nevitt*, 135 Ill. 2d 423, 447 (1990).

¶ 24    Here, the incident took place at around 1:30 p.m. in broad daylight. Sreniawski and Diarra both personally saw Trotter throw a firearm over the schoolyard fence, whereupon Diarra retrieved the firearm and confirmed it was loaded. The parties stipulated to Trotter's lack of a valid FOID Card and CCL. Moreover, Sreniawski's challenged testimony was a brief comment that formed a negligible portion of the State's overall case and simply set the stage for his suspicion of Trotter. Contrast with *Brown*, 232 Ill. App. 3d at 899 (reversal was required based on "extensive and detailed testimony as to the habits and practices of narcotics dealers" that "went far beyond [a] simple comment"). Under these facts, there is no reasonable probability that the jury would have acquitted Trotter absent the challenged testimony. Reversal is not warranted.

¶ 25                      III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 27    Affirmed.