2025 IL App (1st) 232120

No. 1-23-2120

Opinion filed June 6, 2025

Fifth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 22 CR 569601 |
| | ) | |
| OMAR U LOPEZ a/k/a Omar Lopez, | ) | Honorable |
| | ) | Michael Hood, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment and
opinion.

**OPINION**

¶ 1      Following a trial, a jury found defendant Omar U Lopez, also known as Omar Lopez, guilty

of being an armed habitual criminal, unlawful use of a weapon by a felon, and two counts of

aggravated unlawful use of a weapon. The trial court subsequently sentenced Lopez to 10 years'

imprisonment on all four counts with those sentences to be served concurrently. Lopez now

appeals and contends that (1) his convictions for unlawful use of a weapon by a felon and

aggravated unlawful use of a weapon must be vacated because they violate the one-act, one-crime

doctrine, (2) his sole remaining conviction for being an armed habitual criminal is based on a

statute that is unconstitutional on its face and as applied to him under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), (3) his convictions for unlawful use of a weapon by a felon and aggravated unlawful use of a weapon in past cases are void for being based on statutes that are also facially unconstitutional under *Bruen*, and (4) the trial court excessively sentenced him and relied on an improper factor in aggravation when doing so. For the reasons that follow, we vacate Lopez's convictions in the instant case for unlawful use of a weapon by a felon and aggravated unlawful use of a weapon for violating the one-act, one-crime doctrine, but affirm his conviction and sentence for being an armed habitual criminal. Additionally, Lopez's convictions from past cases are not void and remain valid.

¶ 2                                    I. BACKGROUND

¶ 3      A grand jury indicted Lopez with six counts of being an armed habitual criminal, unlawful use of a weapon by a felon and aggravated unlawful use of a weapon. The State proceeded to trial against him on four counts (counts I, II, IV and V). Count I alleged that Lopez committed the offense of being an armed habitual criminal—now known as unlawful possession of a firearm by a repeat felony offender (see Pub. Act 103-822, § 20 (eff. Jan. 1, 2025) (amending 720 ILCS 5/24-1.7))—for possessing a firearm after having been previously convicted of unlawful use of a weapon by a felon twice. Count II alleged that Lopez committed the offense of unlawful use of a weapon by a felon for possessing a firearm after having been previously convicted of unlawful use of a weapon by a felon. Count IV alleged that Lopez committed the offense of aggravated unlawful use of a weapon for, *inter alia*, carrying a firearm without having been issued a currently valid license under the Firearm Concealed Carry Act (Concealed Carry Act) (430 ILCS 66/1 *et seq.* (West 2022)). Count V alleged that Lopez committed the offense of aggravated unlawful

use of a weapon for, *inter alia*, carrying a firearm without having been issued a currently valid Firearm Owner's Identification (FOID) card.

¶ 4    At trial, the State's evidence showed that, in the early evening of April 17, 2022, Lopez was sitting in a Honda Accord registered to him at a gas pump at a BP gas station located in Chicago. While there, an unidentified individual came up to Lopez from behind the gas pump and began shooting at him. Lopez returned fire and then sped away from the gas station while the unidentified shooter and an unidentified accomplice to the shooter continued shooting at Lopez. While speeding away from the gas station, Lopez crashed his vehicle and fled the scene on foot. Witnesses provided the police with a description of the driver, and based on that description, officers observed Lopez in an alley and detained him. Because of the police activity, a neighbor checked his security camera footage and observed someone drop an item behind a car that made a metallic sound. When the neighbor searched that location, which was near where Lopez was detained, he discovered a firearm. An officer recovered the firearm, and testing connected the firearm to ballistics evidence found in Lopez's vehicle. When interviewed by the police, Lopez admitted to discharging the firearm, but claimed he did so only after being shot at first, which surveillance video from the gas station corroborated. During the State's case, the parties stipulated to Lopez having the predicate offenses to support convictions for being an armed habitual criminal and unlawful use of a weapon by a felon as well as not having a concealed carry license or FOID card. Lopez did not testify, and the defense did not present any evidence. Following closing arguments, the jury found Lopez guilty on all four counts.

¶ 5    The case proceeded to sentencing, where Lopez's presentence investigative report showed he was 33 years old at the time of sentencing and had a criminal history consisting of a prior conviction for aggravated driving while under the influence from 2021 for which he received one

year imprisonment, two prior convictions for unlawful use of a weapon by a felon from 2018 and 2015 for which he received four years' and three years' imprisonment, respectively, and a prior conviction for aggravated unlawful use of a weapon from 2015 for which he received one year imprisonment. At the time of his arrest, Lopez worked at a body shop and continued working as a body shop technician while on bond in the case. Lopez had two sons, both of whom were young teenagers, with the eldest son residing with him as well as Lopez's mother. Although Lopez had a good relationship with his eldest son, Lopez reported that his youngest son "resent[ed] him" because of the current case. Lopez also acknowledged being involved in a gang for several years but claimed he had left the gang.

¶ 6    During the sentencing hearing, in aggravation, although the State noted that Lopez was not charged for discharging a firearm and fired his weapon in response to being fired upon first, he nevertheless did so in a public place where innocent bystanders were located. The State further highlighted Lopez's criminal history, including multiple firearms-related offenses.

¶ 7    In mitigation, Lopez's defense counsel acknowledged Lopez discharged his weapon but asserted that he did so only to extricate himself from a deadly situation. Counsel therefore argued that Lopez acted under strong provocation given his life was in danger and that there were substantial grounds to excuse or justify his criminal conduct. Counsel further noted that the circumstances of Lopez's case were unlikely to recur because he was simply minding his own business at a gas station when he was attacked. Counsel highlighted that Lopez's mother lived with him and he had two children, one of whom he lived with and the other whom he still supported, resulting in extreme hardship for them if he were to receive a sentence above the minimum. While counsel conceded that Lopez had multiple prior felony convictions, counsel argued that the mitigation and lack of aggravating factors weighed in favor of a minimum sentence.

Counsel concluded argument by asking the court for "compassion" and "leniency" because, in part, Lopez "accept[ed] his responsibility in this" case.

¶ 8 Immediately following defense counsel's argument, the trial court asked Lopez if he wished to speak in allocution, but he declined. In response, the court stated: "Okay. So with that, there's been no taking of responsibility or any issues with regard to [Lopez] expressing remorse." Thereafter, the court observed that it reviewed Lopez's presentence investigative report, heard the argument in aggravation and mitigation, considered "specific factors," and observed the trial, which involved "a crazy set of facts." The court acknowledged that Lopez only discharged his firearm in response to being fired upon, but nonetheless observed that his actions caused bullets to "fly[ ] all over the place" where bystanders were potentially present. The court noted: "People walking around with baby carriages and strollers. Who knows what was there?"

¶ 9 The trial court agreed with defense counsel that there was mitigation, but it disagreed that Lopez's criminal conduct was the result of circumstances unlikely to recur given this was Lopez's fourth firearms-related offense. The court recognized Lopez had children yet asserted it had to think about more than just Lopez, including "[t]he effect on the community, punishment, [and] rehabilitation." Based on Lopez's criminal history, the court did not believe he was entitled to a minimum sentence and subsequently sentenced him to 10 years' imprisonment on all four counts to be served concurrently.

¶ 10 Lopez filed an unsuccessful motion to reconsider sentence, and this appeal follows.

¶ 11 II. ANALYSIS

¶ 12 On appeal, Lopez raises multiple contentions, the majority of which are aimed at vacating his convictions in the instant case and some that are aimed at obtaining a remand for resentencing. Because his sentencing claims could become moot if we vacate his convictions (see *People v.*

*Sutton*, 252 Ill. App. 3d 172, 191 (1993)), we address those last. Within Lopez's challenges to his convictions in the instant case, one challenge is constitutional in dimension and the other is under the one-act, one-crime doctrine, which is not. See *People v. Smith*, 2019 IL 123901, ¶ 14 (observing that "the one-act, one-crime rule is not of constitutional dimension"). It is well established "that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort." *People v. Bass*, 2021 IL 125434, ¶ 30. Consequently, we address Lopez's contention involving the one-act, one-crime doctrine first.

¶ 13                    A. One-Act, One-Crime Doctrine

¶ 14    The jury in this case found Lopez guilty of four firearms-related offenses, all based on his possession of a singular firearm. He argues, and the State concedes, that, under the one-act, one-crime doctrine, his convictions for unlawful use of a weapon by a felon and aggravated unlawful use of a weapon must be vacated. Under the one-act, one-crime doctrine "a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v. Coats*, 2018 IL 121926, ¶ 11. When a defendant is convicted of multiple offenses based on possession of the same firearm, as is the case here, only one conviction may stand. *People v. Grant*, 2017 IL App (1st) 142956, ¶ 33. In such a situation, we must vacate the less serious offenses. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 15    In the instant case, Lopez's conviction for being an armed habitual criminal is a Class X felony (720 ILCS 5/24-1.7 (West 2022)) while his convictions for unlawful use of a weapon by felon—due to his criminal background—and aggravated unlawful use of a weapon are Class 2 felonies. *Id.* §§ 24-1.1(a), (e); 24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C), (d)(3). Because a Class X felony is more serious than a Class 2 felony (*People v. West*, 2017 IL App (1st) 143632, ¶ 25), we vacate Lopez's less serious convictions of unlawful use of a weapon by felon and aggravated unlawful

use of a weapon (counts II, IV, and V). We also direct the clerk of the circuit court to correct Lopez's mittimus by vacating these convictions. See *id.*

¶ 16                     B. Constitutionality of the Armed Habitual Criminal Statute

¶ 17    Having vacated Lopez's convictions for unlawful use of a weapon by a felon and aggravated unlawful use of a weapon, his only remaining conviction is for being an armed habitual criminal. And so, although Lopez challenges the constitutionality of the unlawful use of a weapon by a felon and aggravated unlawful use of a weapon statutes, in addition to the armed habitual criminal statute, we need not address those two statutes at this moment—though we will address them later in this decision insofar as they relate to Lopez's challenges to his convictions in past cases. In turn, Lopez contends that the armed habitual criminal statute violates his right to bear arms under the second amendment of the United States Constitution (U.S. Const., amend. II), and thus, is unconstitutional on its face and as applied to him.

¶ 18    The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The second amendment applies to the states through the fourteenth amendment (U.S. Const., amend. XIV). *People v. Chairez*, 2018 IL 121417, ¶ 23. Recently, in *Bruen*, 597 U.S. at 17, the United State Supreme Court observed that, since *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), federal appellate courts have utilized "a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." Eschewing that approach, the Court instead enunciated a different approach, asserting that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. And thus, to regulate such conduct, "the government must demonstrate that

the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Based on this approach, the Court found a New York law requiring citizens to demonstrate a special need for self-protection to obtain an unrestricted license to carry a concealed firearm in public was unconstitutional. *Id.* at 38-39.

¶ 19    In the opinion, the Court made clear that its test only applied to laws attempting to regulate possession of firearms by "law-abiding citizens." See *id.* at 29, 38, 60. Buttressing this narrow application, Justice Alito, in a concurrence, stated: "All that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense ***." *Id.* at 76 (Alito, J., concurring). Similarly, Justice Kavanaugh, in a concurrence, noted that the New York law "den[ied] the right to carry handguns for self-defense to many ordinary, law-abiding citizens." (Internal quotation marks omitted.) *Id.* at 79 (Kavanaugh, J., concurring, joined by Roberts, C.J.). What is more, in Justice Kavanaugh's concurrence, he posited that, under the proper interpretation of the second amendment, various firearm regulations are constitutional and then quoted from *Heller* that: " '[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***.' " *Id.* at 81 (quoting *Heller*, 554 U.S. at 626). More recently, in *United States v. Rahimi*, 602 U.S. 680 (2024), in discussing *Heller*, the Court asserted that its prior decision "stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Id.* at 699 (quoting *Heller*, 554 U.S. at 626, 627 n.26).

¶ 20    Having provided an overview of the *Bruen* decision, we begin with Lopez's facial challenge to the constitutionality of the armed habitual criminal statute. A party challenging the constitutionality of a statute "carr[ies] the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional." (Internal quotation marks omitted.) *People*

*v. Rizzo*, 2016 IL 118599, ¶ 23. "[A] facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *People v. Thompson*, 2015 IL 118151, ¶ 36. If there exists a situation in which the statute could be validly applied, a facial challenge must fail. *Rizzo*, 2016 IL 118599, ¶ 24. Whether a statute is constitutional is a question of law we review *de novo. People v. Villareal*, 2023 IL 127318, ¶ 14. Although Lopez raises this challenge for the first time on appeal, a party may raise a facial constitutional challenge at any time. *Id.* ¶ 13.

¶ 21    At the time Lopez committed the offense of being an armed habitual criminal, the statute provided that "A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of" certain enumerated felonies, including unlawful use of a weapon by a felon. 720 ILCS 5/24-1.7(a) (West 2022). As the statute explicitly states, a prerequisite to a conviction for being an armed habitual criminal is two prior qualifying felonies. *People v. Gray*, 2024 IL 127815, ¶ 22.

¶ 22    Because the United States Supreme Court's decision in *Bruen* was rooted in second amendment protections to law-abiding citizens, the appellate court has concluded that statutes "prohibit[ing] felons from possessing firearms *** generally fall outside of [the second amendment's] scope." *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 20; see *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 ("The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant."). In turn, the appellate court has considered whether the armed habitual criminal statute is facially unconstitutional in numerous cases and consistently found that the statute is facially constitutional because felons are not part of "the people" protected

by the second amendment (U.S. Const., amend. II), resulting in the *Bruen* test not applying. See *People v. McTizic*, 2025 IL App (1st) 240467-U, ¶¶ 8-13; *Gray*, 2025 IL App (1st) 191086-B, ¶ 20; *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶¶ 85, 89; *People v. Thomas*, 2024 IL App (4th) 240315-U, ¶¶ 23-24; *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-22, 30. We see no reason to depart from these well-reasoned holdings and similarly conclude that, because the second amendment only protects the right of law-abiding citizens to bear arms, the *Bruen* test does not apply to the armed habitual criminal statute. Consequently, the armed habitual criminal statute is constitutional on its face.

¶ 23     We note that multiple decisions from the appellate court have concluded that the *Bruen* test applies to statutes prohibiting felons from bearing arms. See *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 25-26; *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89. But, even in those cases, the appellate court concluded that the statutes at issue—the armed habitual criminal and unlawful use of a weapon by a felon statutes—were consistent with the United States' historical tradition of firearm regulation (see *Travis*, 2024 IL App (3d) 230113, ¶ 33; *Brooks*, 2023 IL App (1st) 200435, ¶ 100) and, therefore, facially constitutional. As such, although we agree with the decisions finding the *Bruen* test inapplicable to statutes restricting firearm possession for felons, even if the *Bruen* test applied, Lopez's facial challenge to the armed habitual criminal statute would still fail.

¶ 24     Next, we address whether the armed habitual criminal statute is unconstitutional, as applied to Lopez, which he argues is the case because he is a nonviolent felon. An as-applied challenge is a question of law that we review *de novo* (*People v. Swenson*, 2020 IL 124688, ¶ 19), and it "requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *Thompson*, 2015 IL 118151, ¶ 36. "Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for

purposes of appellate review." *Id.* ¶ 37. "[A] reviewing court is not capable of making an as-applied finding of unconstitutionality in the 'factual vacuum' created by the absence of an evidentiary hearing and findings of fact by the trial court." *People v. Harris*, 2018 IL 121932, ¶ 41 (quoting *People v. Minnis*, 2016 IL 119563, ¶ 19). Lopez failed to raise his as-applied challenge in the trial court, and to this end, the State argues that he has forfeited it. Critically, the State posits that Lopez's failure to raise the issue below deprived it of an opportunity to show that he is *not* a nonviolent felon during an evidentiary hearing.

¶ 25    In *People v. Holman*, 2017 IL 120655, ¶ 20, *overruled on other grounds by People v. Wilson*, 2023 IL 127666, the defendant appealed from the denial of his *pro se* petition for leave to file a successive postconviction petition and argued for the first time that his sentence of natural life imprisonment was unconstitutional under recent United States Supreme Court precedent, in particular *Miller v. Alabama*, 567 U.S. 460 (2012). In reviewing the propriety of the defendant raising the claim for the first time on appeal, our supreme court noted that, in *Thompson*, it "instruct[ed] that a defendant must present an as-applied constitutional challenge to the trial court in order to create a sufficiently developed record." *Holman*, 2017 IL 120655, ¶ 32. But our supreme court observed that, in *People v. Davis*, 2014 IL 115595, it "create[d] a very narrow exception to that rule for an as-applied *Miller* claim for which the record is sufficiently developed for appellate review." *Holman*, 2017 IL 120655, ¶ 32. The court subsequently found that the defendant's *Miller* claim "[did] not require factual development," as "[a]ll of the facts and circumstances to decide the defendant's claim *** [were] already in the record." *Id.* As such, in the interest of judicial economy, our supreme court addressed the claim. *Id.* In further analyzing *Holman*, our supreme court later observed that the reason it could address the defendant's as-

applied claim was because "[t]he critical determinations were purely legal issues." *Harris*, 2018 IL 121932, ¶ 44.

¶ 26     In the instant case, Lopez's as-applied challenge centers around his status as an alleged nonviolent felon. But, as discussed, a felon is "simply outside the box drawn by *Bruen*." *Baker*, 2023 IL App (1st) 220328, ¶ 37. To this end, the appellate court has rejected the distinction between being a violent felon and nonviolent felon for purposes of *Bruen* and the second amendment. See *Travis*, 2024 IL App (3d) 230113, ¶ 37 (holding that the armed habitual criminal statute is constitutional, as applied to the defendant, "irrespective of the violent or nonviolent nature of [the defendant's] convictions"); *Brooks*, 2023 IL App (1st) 200435, ¶ 100 (holding that the armed habitual criminal statute is constitutional, as applied to the defendant, even though his prior felonies were nonviolent ones because he was still "not a law-abiding citizen").

¶ 27     Because this distinction is insignificant, no further development of the record, in particular of Lopez's specific circumstances and whether he is a nonviolent felon, is necessary because all that matters is that Lopez is a felon—a fact already shown in the trial court. The underpinning of the exception created by *Davis* for *Miller* claims, as discussed in *Holman* and *Harris*, applies equally here because a felon's status as violent or nonviolent is inconsequential, as Lopez's as-applied claim under *Bruen* does not require any factual development. Therefore, Lopez's as-applied challenge is appropriate at this time, and the armed habitual criminal statute is constitutional as applied to him.

¶ 28     Because the armed habitual criminal statute is constitutional on its face and as applied to Lopez, his armed habitual criminal conviction must stand.

¶ 29                         C. Constitutionality of Prior Convictions

¶ 30    In a similar vein to Lopez's constitutional challenge to his armed habitual criminal conviction, he also challenges the constitutionality of his convictions for unlawful use of a weapon by a felon from 2018 and 2015 (case numbers 18-CR-667801 and 15-CR-1687601), and aggravated unlawful use of a weapon from 2015 (case number 14-CR-1405301). Based on *Bruen*, Lopez contends that these previous convictions were based on facially unconstitutional statutes, and therefore, void *ab initio*, necessitating that they be vacated.

¶ 31    Although this case is a direct appeal from case number 22-CR-569601, "under Illinois law, there is no fixed procedural mechanism or forum, nor is there any temporal limitation governing when a void *ab initio* challenge may be asserted." *In re N.G.*, 2018 IL 121939, ¶ 57. "A void order may be attacked at any time in any court," and "[s]uch challenges are not subject to forfeiture [citation] or any other ordinary procedural bar." *Id.* All that is required is that a defendant "raises his or her challenge through an appropriate pleading in a court possessing jurisdiction over the parties and the case." *Id.* Lopez has done so here, and therefore, we may address his contention that his past convictions are void for being based on facially unconstitutional statutes. See *People v. Matthews*, 2022 IL App (4th) 210752, ¶¶ 23-37 (addressing whether a defendant's prior convictions for unlawful use of a weapon from the early 1990s were void for being based on facially unconstitutional statutes in an appeal from the dismissal of a postconviction petition that challenged non-related convictions).

¶ 32    Turning to the unlawful use of a weapon by a felon statute, which, at the time Lopez committed the offenses, provided that:

> "It is unlawful for a person to knowingly possess on or about his person or on his
>
> land or in his own abode or fixed place of business any weapon prohibited
>
> under Section 24-1 of this Act or any firearm or any firearm ammunition if the

person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2018).

See 720 ILCS 5/24-1.1(a) (West 2014).

Applying the same rationale in our discussion of whether the armed habitual criminal statute was facially unconstitutional, *i.e.*, that *Bruen* only concerned attempts to regulate possession of firearms by law-abiding citizens, the appellate court has consistently found that the unlawful use of a weapon by a felon statute is facially constitutional because *Bruen* simply does not apply. See *People v. Boss*, 2025 IL App (1st) 221855, ¶ 33; *People v. Atkins*, 2024 IL App (1st) 221138-U, ¶ 23; *People v. Benson*, 2024 IL App (1st) 221230-U; ¶ 48; *People v. Avery*, 2024 IL App (1st) 230606-U, ¶¶ 25, 30; *People v. Burns*, 2024 IL App (4th) 230428, ¶¶ 21-22. We see no reason to depart from these well-reasoned holdings and similarly conclude that, because the second amendment only protects the right of law-abiding citizens to bear arms, the *Bruen* test does not apply to the unlawful use of a weapon by a felon statute. And, as discussed, even if the *Bruen* test did apply, such a prohibition is consistent with the United States' historical tradition of firearm regulation and, therefore, still facially constitutional. See *Travis*, 2024 IL App (3d) 230113, ¶ 33; *Brooks*, 2023 IL App (1st) 200435, ¶ 100. Consequently, Lopez's two prior convictions for unlawful use of a weapon by a felon were based on facially constitutional statutes, and the convictions remain valid.

¶ 33    We now turn to Lopez's prior aggravated unlawful use of a weapon conviction, wherein he was convicted for, *inter alia*, carrying a firearm in public without having been issued a currently valid license under the Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2014)). See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2014). The portion of the aggravated unlawful use of a weapon statute under which he was convicted provided that:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm ***

*** and

(3) One of the following factors is present:

***

(A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act[.]" *Id.*

¶ 34    In *Bruen*, the United States Supreme Court expressly noted that Illinois was 1 of 43 states that were " 'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Bruen*, 597 U.S. at 13, 13 n.1 (citing the Concealed Carry Act). Although the Court struck down New York's law requiring citizens to demonstrate a special need for self-protection to obtain an unrestricted license to carry a concealed firearm in public—one that gave the government discretion in awarding licenses (*id.* at 38-39)—it clarified that "nothing in our analysis should be interpreted to suggest

the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Id.* at 38 n.9. The Court explained:

> "Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. [Citation.] Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' [Citation.] And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing officials, [citation], rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' [citation]—features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id.*

Based on *Bruen*, in *People v. Gunn*, 2023 IL App (1st) 221032, ¶¶ 29-32, the appellate court concluded that the Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2020)) was facially constitutional and, therefore, the portion of the aggravated unlawful use of a weapon statute that prohibited, *inter alia*, carrying a firearm in public without having been issued a currently valid concealed carry license was likewise constitutional on its face. This holding has been universally adopted by the appellate court. See *People v. Trotter*, 2025 IL App (1st) 231566-U, ¶ 19; *Burns*, 2024 IL App (4th) 230428, ¶ 42; *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 61; *People v.*

*Kuykendoll*, 2023 IL App (1st) 221266-U, ¶¶ 25-27; *People v. Thompson*, 2023 IL App (1st) 220429-U, ¶ 60, *appeal allowed*, No. 129965 (Ill. Nov. 29, 2023). We see no reason to depart from these well-reasoned holdings and similarly conclude that the aggravated unlawful use of a weapon statute based on carrying a firearm in public without having been issued a currently valid concealed carry license is facially constitutional.

¶ 35    It is true that *Bruen* left open the possibility for constitutional challenges to shall-issue regimes based on lengthy processing times for licenses or excessive licensing fees. See *Bruen*, 597 U.S. at 38 n.9. To this end, Lopez fleetingly mentions there is a fee to obtain a concealed carry license (see 430 ILCS 66/60 (West 2014)) and approval for such a license may take up to 90 days (see *id.* § 10(e)), but he does not truly base his constitutional challenge to the aggravated unlawful use of a weapon statute upon the fee being exorbitant or the wait time being protracted. Consequently, Lopez's prior conviction for aggravated unlawful use of a weapon was based on a facially constitutional statute, and the conviction remains valid.

¶ 36                                    D. Sentencing Claims

¶ 37                                    i. Excessive Sentence

¶ 38    Having resolved Lopez's constitutional challenges, we address his sentencing claims. First, Lopez argues that the trial court's 10-year sentence for being an armed habitual criminal was excessive because it failed to sufficiently consider the strong mitigating factors weighing in favor of a reduced sentence.

¶ 39    The Illinois Constitution requires the trial court to sentence a defendant according to the seriousness of his offense and with the goal of returning him to useful citizenship (Ill. Const. 1970, art. I, § 11), or, stated otherwise, to consider his rehabilitative potential. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Our legislature prescribes the acceptable sentencing ranges for criminal

offenses, and the court imposes a sentence within the prescribed range. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16. In determining the appropriate sentence, we afford the court broad discretion (*People v. Alexander*, 239 Ill. 2d 205, 212 (2010)), and we will not reverse a sentence absent an abuse of that discretion. *People v. Geiger*, 2012 IL 113181, ¶ 27.

¶ 40    We provide such deference to the trial court because it had "the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "We presume a trial court evaluates the relevant factors in mitigation before it, and that presumption cannot be overcome without affirmative evidence of the sentencing court's failure to do so." *People v. Williams*, 2017 IL App (1st) 150795, ¶ 44. "Nothing requires the trial court set forth every reason or specify the weight it gave to each factor when determining the sentence." *Id.* When the court sentences the defendant within the statutory range, the sentence is presumed proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46. Such a sentence may "be deemed excessive and the result of an abuse of discretion" if it "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 41    In the instant case, Lopez's conviction for being an armed habitual criminal was a Class X felony (720 ILCS 5/24-1.7(b) (West 2022)), which subjected him to a sentence of between 6 and 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2022). The trial court sentenced him to 10 years' imprisonment, meaning the sentence was presumptively proper. See *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 42    In sentencing Lopez, the trial court remarked that it observed his jury trial, considered his presentence investigation report, the evidence offered in aggravation and mitigation, and "specific factors." The court then highlighted that Lopez's conduct—in responding to being shot at with his

own gunfire—threatened serious harm. See 730 ILCS 5/5-5-3.2(a)(1) (West 2022) (a statutory aggravating factor is whether "the defendant's conduct caused or threatened serious harm"). While the record, including the surveillance video, did not demonstrate that there were baby carriages or strollers around the gas station at the moment of the shooting, as the court mentioned, the court made this comment to underscore the dangers posed by Lopez being involved in a shootout in a public location during broad daylight, not that there were actually baby strollers in the crossfire of the shooting. Indeed, the surveillance video of the shooting showed two occupied vehicles at adjacent gas pumps to Lopez and one other vehicle parked in gas station parking lot excluding the vehicle of Lopez's attackers. In fact, shortly after the shooting began, the occupant of one of the vehicles ran away from his vehicle and went behind the vehicle of Lopez's attackers, meaning Lopez easily could have shot an innocent bystander while attempting to shoot his attackers.

¶ 43    Of course, this aggravating factor must be balanced by the mitigation that Lopez only became involved in the shootout after being fired upon first. But the trial court was plainly aware of the circumstances that led to Lopez being charged with the firearms-offense. Specifically, during defense counsel's argument when attempting to portray Lopez as a victim of circumstance, the court interjected to note that Lopez was never charged with an offense for firing his weapon and later added that he was not charged with aggravated discharge of a firearm "for a reason." The court also weighed Lopez's lengthy criminal history, which is a statutory aggravating factor (see *id.* § 5-5-3.2(a)(3)), and based on that history, the court was justified in sentencing him above the minimum. See *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) (observing that a defendant's "criminal history alone" may "warrant sentences substantially above the minimum"). While the court never explicitly considered the defendant's rehabilitative potential beyond a vague and fleeting reference to considering "the community, punishment, [and] rehabilitation," which

sentences must take into consideration (see *Knox*, 2014 IL App (1st) 120349, ¶ 46), the court implicitly considered this factor through its recitation of Lopez's criminal history and the fact that prior stints of incarceration had not deterred him from possessing firearms.

¶ 44 Still, Lopez argues that the trial court failed to sufficiently consider the potential for his children's well-being to be negatively affected by his incarceration, which is a statutory mitigating factor. See 730 ILCS 5/5-5-3.1(a)(18) (West 2022). But the court did acknowledge that Lopez had children, yet it balanced this factor with the totality of the circumstances to ultimately find that he did not deserve the minimum sentence. Contrary to Lopez's argument, the court's explicit comments during sentencing demonstrate that it considered this mitigator factor. The court just did not consider this factor as strongly as Lopez would like. This argument is, at its core, a request for us to reweigh evidence already considered by the court and arrive at a different sentence, which we cannot do. See *Alexander*, 239 Ill. 2d at 214-15 (stating that "it is not [the] duty" of a reviewing court "to reweigh the factors involved in [a] sentencing decision" and chastising an appellate court for "substitut[ing] its own judgment for that of the trial court because it would have weighed the factors differently").

¶ 45 Additionally, Lopez claims that the trial court did not truly consider multiple statutory mitigating factors that he "acted under a strong provocation," "[t]here were substantial grounds tending to excuse or justify [his] criminal conduct, though failing to establish a defense," and his "criminal conduct was induced or facilitated by someone other than [himself]." 730 ILCS 5/5-5-3.1(a)(3)-(5) (West 2022). However, Lopez's criminal conduct in this case was based on possessing a firearm despite multiple felony convictions. Regardless of the fact that he was shot at in the gas station parking lot, Lopez nevertheless was armed with a firearm when he should not have been. His criminal conduct that day of being an armed habitual criminal occurred well before

he was ever shot at, and thus, these statutory mitigating factors do not weigh in favor of a lesser sentence.

¶ 46    Having reviewed the record, we cannot say the trial court's sentence—just four years above the minimum allowable—was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. Consequently, Lopez's 10-year sentence for being an armed habitual criminal was not excessive.

¶ 47                         ii. Negative Inference From Silence During Allocution

¶ 48    Lopez furthers argues that, during his sentencing hearing, the trial court improperly made a negative inference from his silence during allocution as being unremorseful for what occurred. Lopez concedes that he neither objected to this alleged action by the court during his sentencing hearing nor included this specific claim in his motion to reconsider sentence, resulting in him forfeiting this argument on appeal. See *People v. Harvey*, 2018 IL 122325, ¶ 15. Nevertheless, Lopez argues that this issue is reviewable under the plain-error doctrine, which has two prongs, but a threshold question of whether a plain or obvious error actually occurred. *People v. Johnson*, 2024 IL 130191, ¶¶ 43-44. We review whether the court committed plain error *de novo* (*People v. Yankaway*, 2025 IL 130207, ¶ 111), which is the same standard of review as whether the court relied on an improper factor during sentencing. *People v. Matute*, 2020 IL App (2d) 170786, ¶ 53.

¶ 49    Under the fifth amendment of the United States Constitution, applicable to the states through fourteenth amendment (*Malloy v. Hogan*, 378 U.S. 1, 8 (1964)), no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. This is the privilege against self-incrimination (*People v. Sneed*, 2023 IL 127968, ¶ 101), and the Illinois Constitution has a similar provision. See Ill. Const. 1970, art. I, § 10 (providing that "[n]o person shall be compelled in a criminal case to give evidence against himself"). Although the provisions

of the United States Constitution and Illinois Constitution are worded differently, they "are 'virtually identical,' " and we generally interpret them in lockstep. *Sneed*, 2023 IL 127968, ¶ 63 (quoting *Relsolelo v. Fisk*, 198 Ill. 2d 142, 149-50 (2001)).

¶ 50    Under the fifth amendment, "[t]he normal rule in a criminal case is that no negative inference from the defendant's failure to testify is permitted." *Mitchell v. United States*, 526 U.S. 314, 327-28 (1999). Although the privilege is most commonly known as a trial right, it applies equally during sentencing. *Id.* at 326-27; see *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 48 (asserting that "defendants enjoy the fifth amendment right against self-incrimination during the sentencing phase"). And so, the trial court may not infer a lack of remorse by a defendant or draw a negative inference from him executing his right to remain silent during the sentencing phase. *Matute*, 2020 IL App (2d) 170786, ¶ 59; *Maggio*, 2017 IL App (4th) 150287, ¶ 49.

¶ 51    In the instant case, before the trial court made any comments, defense counsel, during argument, asked the court for "compassion" and "leniency" because, in part, Lopez "accept[ed] his responsibility." The court subsequently asked Lopez if he wanted to speak in allocution, but he declined. Immediately after, the court remarked: "Okay. So with that, there's been no taking of responsibility or any issues with regard to [Lopez] expressing remorse." When considering whether reversible error has occurred based on the trial court allegedly considering an improper factor, "a reviewing court should not focus on a few words or statements of the trial court, but should make its decision based on the record as a whole." *People v. Miller*, 2014 IL App (2d) 120873, ¶ 37.

¶ 52    Whether the trial court inferred a lack of remorse from Lopez's declination to speak to allocution or simply noted that he had not expressed remorse, viewing the record as a whole, the court's comment does not show that it relied on any negative inference from his silence during

allocution when sentencing him to 10 years' imprisonment for being an armed habitual criminal. See *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007) (to obtain a remand for resentencing, the "defendant must show more than the mere mentioning of an improper fact," as "[a]n isolated remark made in passing, even though improper, does not necessarily require that defendant be resentenced" because the "defendant must show that the trial court relied on the improper fact when imposing sentence" (internal quotation marks omitted)). Rather, the court made the comment in direct response to defense counsel's assertion that Lopez had taken responsibility for the matter juxtaposed with Lopez's declination to speak in allocution. After making the comment, the court moved on to discuss what it actually considered in arriving at Lopez's 10-year sentence, namely his presentence investigative report, the argument in aggravation and mitigation, "specific factors," and the jury trial itself. And critically, nowhere in the court's remarks about why it believed a 10-year sentence was appropriate for Lopez did it make or rely on a negative inference from his silence during allocution.

¶ 53    In arguing for a remand for resentencing, Lopez relies on *Matute*, 2020 IL App (2d) 170786. There, during a defendant's sentencing hearing after beginning its recitation about what it relied upon, the trial court remarked that it was " 'a little bit disturbing that the defendant has not offered any allocution whatsoever and even changed the story when [it] came to statements [that defendant] made to the probation officer which [vary] significant[ly] from the video confession that this defendant has given.' " *Id.* ¶ 56. Moreover, when denying the defendant's motion to reconsider sentence, the court added: " 'And I also considered heavily the defendant's lack of remorse and the defendant's now recent denial.' " *Id.* ¶ 57. In vacating the defendant's sentence and remanding for resentencing based on the remarks, the appellate court found that "the

problem [was] that the court explicitly relied on defendant offering no allocution" when fashioning its sentence, "and we do not know how much weight was placed on the improper factor." *Id.* ¶ 63.

¶ 54 In the instant case, in contrast to *Matute*, the trial court did not make or rely on a negative inference from Lopez's silence during allocution when determining the appropriate sentence for him. Rather, as discussed, the court made the fleeting remark specifically in reference to defense counsel's assertion that Lopez had accepted responsibility for his actions in the case coupled with Lopez's declination to speak in allocution. Consequently, the court did not use an improper aggravating factor when sentencing Lopez to 10 years' imprisonment for being an armed habitual criminal, resulting in no clear or obvious error occurring. And because no clear or obvious error occurred, there can be no plain error. See *Yankaway*, 2025 IL 130207, ¶ 115.

¶ 55                                III. CONCLUSION

¶ 56 For the foregoing reasons, we vacate Lopez's convictions for unlawful use of a weapon by a felon (count II) and aggravated unlawful use of a weapon (counts IV and V), but affirm the judgment of the circuit court of Cook County in all other respects.

¶ 57 Affirmed in part and vacated in part.

***People v. Lopez*, 2025 IL App (1st) 232120**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CR-569601; the Hon. Michael J. Hood, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Brian E. Koch, and Myasar A. Ihmud, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Noah Montague, and Margaret A. Hillmann, Assistant State's Attorneys, of counsel), for the People. |